IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 11 |
| RIGHT OF WAY MAINTENANCE | § | |
| EQUIPMENT COMPANY, | § | CASE NO. 09-35037 |
| | § | |
| DEBTOR. | § | |
| | § | |
| | § | |
| RIGHT OF WAY MAINTENANCE | § | |
| EQUIPMENT COMPANY, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | ADVERSARY _____ |
| | § | |
| CAMBRIDGE MANAGEMENT GROUP, | § | |
| LLC, BANDAS LAW FIRM, P.C., | § | |
| CHRISTOPHER A. BANDAS, ROBERT C. | § | |
| CURFISS, JACKSON WALKER, L.LP., | § | |
| MOULTON & MEYER, L.L.P., JEFFREY | § | |
| D. MEYER, PATRICIA A. | § | |
| SHACKELFORD, P.C., AND PATRICIA | § | |
| A. SHACKELFORD, GYRO-TRAC, INC. | § | |
| AND GYRO-TRAC (USA) , INC., | § | |
| | § | |
| DEFENDANTS. | § | |

**ROWMEC'S COMPLAINT**

Robert L. Pendergraft, Esq.
TBN: 15743500; SDOT: 00730
Leonard H. Simon, Esq.
TBN: 18387400; SDOT: 8200
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 528-8555 (Main)
(713) 868-1267 (Fax)
ATTORNEYS FOR PLAINTIFF

August 4, 2009

## TABLE OF CONTENTS

I.   JURISDICTION AND VENUE ..................................................................3
II.  PARTIES ...............................................................................................3
III. STATEMENT OF FACTS ......................................................................5
     A.  The Gyro-Trac I Law Suit ...............................................................5
     B.  The Gyro-Trac II Law Suit and Engagement of Bandas and
         Other Attorneys ..............................................................................7
     C.  The Supplemental Contract of Employment ......................................12
     D.  The Deal With Cambridge ...............................................................12
     E.  The Letter of Credit and Fifth Circuit Affirms on Final
         Judgment ........................................................................................14
     F.  O'Hagans' Demand that Bandas Pursue the Claim for
         Commissions Due Under ¶5 of the 2003 Settlement Agreement ......14
     G.  The State Court Case and Events Leading Up to Its Filing ...............15
IV.  CAUSES OF ACTION ............................................................................17
     A.  Count I - Fraudulent Transfer (11 U.S.C. §§ 548, and 550)
         Against Cambridge ..........................................................................17
     B.  Count II - Fraudulent Transfer (11 U.S.C. §§ 548, and 550)
         Against Bandas ...............................................................................19
     C.  Count III – Breach of 2003 Settlement Agreement by Gyro-Trac ......20
     D.  Count IV – Breach of Fiduciary Duty as Against Curfiss,
         Bandas, Meyer and Shackelford .......................................................20
     E.  Count V – Professional Negligence as Against Curfiss, JW,
         Bandas, Meyer and Shackelford .......................................................24
     F.  Count VI – Preferential Transfer (11 U.S.C. §§ 547 and 550)
         Against Bandas, Meyer and Shackelford ...........................................25
     G.  Count VII - Equitable Subordination (11 U.S.C. § 510) ...................25
     H.  Count VIII – Fraud as to Bandas, Curfiss, Meyer and
         Shackelford .....................................................................................26
     I.  Count IX – Breach of Contract by Bandas, Meyer and
         Shackelford .....................................................................................27
     J.  Count X – The Defective Acknowledgement in the Deed of Trust
         (11 U.S.C. § 544(a)) .......................................................................28
V.   PUNITIVE DAMAGES ..........................................................................29
VI.  ACCOUNTING AND REASONABLENESS AND NECESSITY OF
     EXPENSES ............................................................................................29
VII. ATTORNEY FEES .................................................................................29
VIII. PRAYER FOR RELIEF ..........................................................................29

## ROWMEC'S COMPLAINT

PLAINTIFF RIGHT OF WAY MAINTENANCE EQUIPMENT COMPANY, D/B/A ROWMEC ("ROWMEC") submits its complaint against DEFENDANTS CAMBRIDGE MANAGEMENT GROUP, LLC, GYRO-TRAC, INC., GYRO-TRAC (USA) , INC., BANDAS LAW FIRM, P.C, CHRISTOPHER A. BANDAS, ROBERT C. CURFISS, JACKSON WALKER, L.L.P., MOULTON & MEYER, LLP, JEFFREY D. MEYER, PATRICIA A. SHACKELFORD, P.C. AND PATRICIA A. SHACKELFORD  (collectively, "Defendants"), and would respectfully show:

### I.   JURISDICTION AND VENUE

1.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §1409(a).  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This adversary proceeding is commenced pursuant to 11 U.S.C. §§ 510, 544, 547, 548, and 550, and applicable state fraudulent transfer laws, to recover fraudulent transfers, to equitably subordinate certain claims, and to recover damages from the Defendants for breach of contract, breach of fiduciary duty, and common law fraud.

### II.  PARTIES

2.      ROWMEC is a corporation organized under the law of the State of Texas, with its principal place of business in Conroe, Texas.

3.      CAMBRIDGE MANAGEMENT GROUP, LLC ("Cambridge") is a Delaware limited liability company authorized to do business in the State of Texas.  The agent for service of process for Cambridge is CT Corporation System, 350 North Street, Dallas, Texas 75201.

4.    GYRO-TRAC, INC. is a foreign corporation organized under the laws of Canada. This Defendant may be served through its president, Daniel Gaudreault, 4715 Av Des Replats Bureau 280, Quebec, QC, Canada.

5.    GYRO-TRAC (USA), INC. is a foreign corporation organized and existing under the laws of the State of South Carolina, and can be served through its registered agent for service of process, Odette Mones, 10 Flying Cloud Drive, Summerville, SC 29483

6.    BANDAS LAW FIRM, P.C. is a Texas professional corporation doing business at 500 North Shoreline, Suite 1020, Corpus Christi, Texas 78471.  The agent for service of process is Christopher A. Bandas, 5350 S. Staples, Suite 406, Corpus Christi, Texas 78411.

7.    CHRISTOPHER A. BANDAS is a Texas licensed attorney, and can be served at his place of business at 500 N. Shoreline Blvd., Suite 1020, Corpus Christi, Texas 78471.

8.    ROBERT C. CURFISS is a Texas licensed attorney, and can be served at 19826 Sundance Drive, Humble, Texas 77346-1402.

9.    JACKSON WALKER L.L.P. ("JW") is a limited liability partnership in the practice of law in the State of Texas.   JW can be served through its managing partner, T. Michael Wilson, at 901 Main Street, Suite 6000, Dallas, Texas 75202.

10.    MOULTON & MEYER, LLP is a limited liability partnership located in Houston, Texas, and can be served through Jeffrey D. Meyer, a partner, at 800 Taft Street, Houston, Texas 77019.

11.    JEFFREY D. MEYER is a Texas licensed attorney, and can be served at his place of business at 800 Taft Street, Houston, Texas 77019.

12.     PATRICIA A. SHACKELFORD, P.C. is a Texas professional corporation doing business in Corpus Christi, Texas.  The agent for service of process is Patricia A. Shackelford, at 802 N. Carancahua, Suite 2300, Corpus Christi, TX 78470.

13.     PATRICIA A. SHACKELFORD is a Texas licensed attorney, and can be served at her place of business at 802 N. Carancahua, Suite 2300, Corpus Christi, TX 78470.  Patricia A. Shackelford was at all times relevant to this law suit acting within the course and scope of her employment, and/or agency with PATRICIA A. SHACKELFORD, P.C.

### III.  STATEMENT OF FACTS

*A.*     ***The Gyro-Trac I Law Suit***

14.     ROWMEC and Gyro-Trac (USA), Inc. and Gyro-Trac, Inc. (collectively, "Gyro-Trac"), are in the heavy mulching equipment industry.  In a lawsuit instituted by ROWMEC in 2002, in Montgomery County, Texas, as removed to the the United States District Court for the Southern District of Texas - Houston Division, Cause No. H-02-0583 (the "Gyro-Trac I Law Suit"), ROWMEC alleged, among other things, that Gyro-Trac infringed its patents for certain components of machinery manufactured and sold by Gyro-Trac, namely a cutter head attachment and the associated cutter teeth. That lawsuit culminated in a Settlement Agreement dated September 12, 2003, between Rowmec and Gyro-Trac (the "2003 Settlement Agreement"), a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit "1"**.

15.     The 2003 Settlement Agreement, among other things, settled the patent lawsuit, established a technology license between ROWMEC and Gyro-Trac and established a commission structure whereby Gyro-Trac would pay ROWMEC certain commissions on sales of products.  Defendants Christopher A. Bandas (Bandas Law Firm, PC and Christopher A. Bandas

shall be referred to herein collectively as "Bandas") represented ROWMEC in the Gyro-Trac I lawsuit, and, specifically, Bandas and another attorney, Defendant Robert C. Curfiss ("Curfiss"), who at the time was a partner with Defendant JW, gave advice to ROWMEC concerning, and were jointly responsible for negotiating and drafting, the 2003 Settlement Agreement.

16.     Paragraph 5 of the 2003 Settlement Agreement provided as follows:

"5.     Commission Payments by Gyro-Trac. Gyro-Trac shall pay a commission to ROWMEC for any Cutter Head and Cutter Teeth Products sold by it and not manufactured by ROWMEC, including but not limited to sales of TOMA-AX 500. TOMA-AX 700, and Cutter Teeth by Gyro-Trac the United States or its territories.   For purposes of calculating the commission, any cutter head with the capacity of the TOMA-AX 700 or above shall be classified as a Large Cutter Head (LCH) and anything with less than the capacity of the TOMA-AX 700 shall be classified as a Small Cutter Head (SCH):"

17.     Defendants Curfiss and Bandas both assured ROWMEC that, pursuant to paragraph 5 of the 2003 Settlement Agreement, ROWMEC was entitled to receive a commission for any cutter head and cutter teeth products sold by Gyro-Trac regardless of whether such products used designs developed by ROWMEC.  The commission was to be paid for a period of seven years or until the cumulative commission of $5,000,000.00 was paid, whichever occurred first.  This commission was at the heart of the settlement and ROWMEC never would have settled had it known that this commission structure was not in place.

18.     After the 2003 Settlement Agreement, numerous disputes arose between Gyro-Trac and ROWMEC related to the 2003 Settlement Agreement, including the commissions that were due under paragraph 5 of the 2003 Settlement Agreement.

**B.**     ***The Gyro-Trac II Law Suit and Engagement of Bandas and Other Attorneys***

19.     On or about November 1, 2005, Bandas and ROWMEC entered into a Contract of Employment (the "Contract of Employment"), a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit "2"**.  Bandas agreed to pursue two claims for ROWMEC, as follows:

(i)     Breach of the 2003 Settlement Agreement, which included unpaid commissions under paragraph 5 of the 2003 Settlement Agreement; and

(ii)    Breach of the Texas Farm, Industrial and Outdoor Power Equipment Dealer Act, Tex. Bus.& Com. Code §19.01, et seq.

20.     On November 30, 2005, Bandas, on behalf of ROWMEC, commenced an action in federal district court in the Southern District of Texas – Houston Division, against Gyro-Trac Inc. and Gyro-Trac (USA) Inc. (collectively "Gyro-Trac"), Cause No. 05-4081 (the "Gyro-Trac II Law Suit").

21.     On October 26, 2006, ROWMEC filed a motion for partial summary judgment. Document No. 45 in the Gyro-Trac II Law Suit.[1] Gyro-Trac filed a response to ROWMEC's motion for partial summary judgment on November 15, 2006.  Document No. 53 in the Gyro-Trac II Law Suit.  In ROWMEC's motion for partial summary judgment and Gyro-Trac's response, one of the issues raised was whether under paragraph 5 of the 2003 Settlement Agreement ROWMEC was entitled to receive a commission for any cutter head and cutter teeth products sold by Gyro-Trac regardless of whether such products used designs developed by ROWMEC.

22.     On February 7, 2007, Magistrate Nancy K. Johnson issued a Memorandum and Recommendation calling for denial of ROWMEC's motion for partial summary judgment.

---

[1] These pleadings can be found on PACER, at https://ecf.txsd.uscourts.gov/cgi-bin/login.pl, United States District Court for the Southern District of Texas - Houston Division, Cause of Action No. 05-04081, and, when cited to an electronically maintained document, such document is incorporated herein by reference for all purposes.

Document No. 55 in the Gyro-Trac II Law Suit.   In the Memorandum and Recommendation,

Magistrate Johnson stated the following:

> "Plainitff argues that the TOMA-AX 700HF is covered by the commissions provision of the settlement agreement, which requires payment of commissions on "any Cutter Head and Cutter Teeth Products sold by [Defendants] and not manufactured by [Plaintiff].  Plaintiff's argument is simple: Defendants sell the TOMA-AX 700HF cutter head and compatible cutter teeth, and Plaintiff does not manufacture the TOMA-AX 700HF cutter head or compatible cutter teeth; therefore, the TOMA-AX 700HF meets the requirements of the commissions provision.  As Defendants point, however, Plaintiff neglects the definitional phrase that appears in the prior paragraph.

> "In the prior paragraph, the capitalized phrase "Cutter Head and Cutter Teeth Products" is identified as a replacement for the slightly longer, lowercase phrase "cutter heads and cutter teeth in accordance with the designs developed by [Plaintiff].  **Because the commissions provision contains the capitalized version of the phrase, it is beyond argument that "any Cutter Head and Cutter Teeth Products" in that paragraph refers to all "cutter heads and cutter teeth in accordance with the designs developed by ROWMEC**."

*Id.* At pp 5-6 (emphasis added).

23.     On March 7, 2007, Magistrate Johnson's Memorandum and Recommendation

was adopted by the district court.  Document No. 58 in the Gyro-Trac II Law Suit.  Bandas did

not advise the principals of ROWMEC that a motion for partial summary judgment filed by

ROWMEC had been denied.  Until recently, ROWMEC principals knew nothing about the fact

that the court had determined that ROWMEC was entitled to receive a commission only for any

cutter head and cutter teeth products sold by Gyro-Trac that used the designs developed by

ROWMEC.  Plaintiff believes that Bandas failed to advise ROWMEC regarding these events

because he and Curfiss had been the attorneys who negotiated and drafted the 2003 Settlement

Agreement, and were concerned about disclosing their malpractice.

24.     On May 2, 2007, ROWMEC, Bandas and Moulton & Meyer, LLP ("MM")

entered into an agreement whereby MM and Jeffrey D. Meyer of MM law firm (MM and Jeffrey

D. Meyer shall be referred to collectively as "Meyer") were engaged on behalf of ROWMEC to appear as co-counsel in the Gyro-Trac II Law Suit.  A true and correct copy of said agreement is attached hereto and incorporated herein by reference as **Exhibit "3"**.  Meyer ultimately tried the lawsuit.

25.     On May 2, 2007, ROWMEC, Bandas and the Shackelford Law Firm ("SLF") entered into an agreement whereby SLF and Patricia A. Shackelford (SLF and Patricia A. Shackelford shall be referred to collectively as "Shackelford") were engaged on behalf of ROWMEC to appear as co-counsel in the Gyro-Trac II Law Suit.  A true and correct copy of said agreement is attached hereto and incorporated herein by reference as **Exhibit "4"**.

26.     During the course of the Gyro-Trac II Law Suit, Bandas engaged a damages expert, Stephen M. Horner, Ph.D ("Horner").  In his last report dated March 13, 2007, Horner opined that the damages for past and future commissions lost under paragraph 5 of the 2003 Settlement Agreement amounted to $1,950,203.00, discounted to present value using a 22% discount factor.

27.     During the Gyro-Trac II Law Suit, Bandas engaged Curfiss, who along with Bandas negotiated and documented the 2003 Settlement Agreement, and designated him as an expert witness in the case.  In his report, Curfiss reached three conclusions: (1) the 2003 Settlement Agreement was a joint distribution agreement; (b) the language of the Settlement Agreement did not limit the technology subject to the commission payments to that developed by ROWMEC; and (c) the TOMA-AX 700HF was covered by the 2003 Settlement Agreement because it is in accordance with the designs developed by ROWMEC.

28.     On May 4, 2007, Gyro-Trac filed a motion to exclude Curfiss' expert testimony. Document No. 68 in the Gyro-Trac II Law Suit.  Gyro-Trac argued that Curfiss' first two

opinions were irrelevant because of the prior ruling of the court on ROWMEC's motion for partial summary judgment, and that, as to the third opinion, it was either not the proper subject of expert testimony or, if it was, Curfiss was not qualified to offer those opinions.

29.     On May 11, 2007, the district court entered an order granting Gyro-Trac's motion to exclude the expert testimony of Curfiss.  Document No. 85 in the Gyro-Trac II Law Suit.

30.     On May 4, 2007, Gyro-Trac also filed a motion to exclude Horner's expert damages testimony.  Document No. 66 in the Gyro-Trac II Law Suit.

31.     On May 11, 2007, the district court entered an order denying Gyro-Trac's motion to exclude the expert damages testimony of Horner.  Document No. 85 in the Gyro-Trac II Law Suit.

32.     On May 14, 2007, ROWMEC and Gyro-Trac filed their Joint Pretrial Statement. Document No. 91 in the Gyro-Trac II Law Suit.

33.     Sometime after the Joint Pretrial Statement was filed, it appears that Bandas, Meyer and Shackelford made a decision to drop ROWMEC's claim for unpaid commissions due under paragraph 5 of the 2003 Settlement Agreement against Gyro-Trac, but failed to advise ROWMEC or its principals of the true reasons for their decision.

34.     On May 29, 2007, the trial commenced.

35.     After the trial commenced, ROWMEC's principals realized that Bandas was not pursuing the commission claim under paragraph 5 of the 2003 Settlement Agreement.  When they asked Bandas about this, Bandas told ROWMEC's principals, in the presence of Meyer and Shackelford, that he had dropped the claim for commissions due under paragraph 5 of the 2003 Settlement Agreement because he was afraid that the jury would get confused.  Bandas, in the presence of Meyer and Shackelford, assured ROWMEC's principals, however, that ROWMEC

would be able to re-filing the commissions claim against Gyro-Trac at a later date, and he agreed to pursue the claim after the trial in the Gyro-Trac II Law Suit was concluded.

36.     On June 6, 2007, the jury came back with a verdict in favor of ROWMEC and against Gyro-Trac on each issue submitted to the jury.  Document No. 150 in the Gyro-Trac II Law Suit.  Specifically, the jury:

a.      Found that Gyro-Trac terminated the ROWMEC dealership without cause;

b.      Found that Gyro-Trac failed to comply with the 2003 Settlement Agreement.

c.      Awarded to ROWMEC $3,600,000.00 in damages that reasonably compensated ROWMEC for its damages that resulted from Gyro-Trac's failure to comply or termination of the dealership without cause.

d.      Found that ROWMEC did not fail to comply with the 2003 Settlement Agreement.

37.     Although the breach of the 2003 Settlement Agreement was clearly submitted to the jury, there was **no** jury submission for the damages for failure to pay commissions under paragraph 5 of the 2003 Settlement Agreement.

38.     On June 12, 2007, after a jury verdict, the Honorable Gray H. Miller entered a money judgment in favor of ROWMEC and against Gyro-Trac for $3,600,000.00 (the "Final Judgment").  Document No. 154 in the Gyro-Trac II Law Suit.

39.     On July 20, 2007, Gyro-Trac appealed the Final Judgment to the Fifth Circuit Court of Appeals.  Bandas, Shackelford and Meyer never appealed from the Memorandum and Recommendation denying ROWMEC's motion for partial summary judgment entered by Magistrate Johnson and adopted by the district court.

40.     On August 6, 2007, the court entered an order taxing costs against Gyro-Trac in the amount of $18,909.73.  Document No. 168 in the Gyro-Trac II Law Suit.

C.     *The Supplemental Contract of Employment*

41.     On or about September 25, 2007, Bandas and ROWMEC entered into a Supplemental to Contract of Employment (the "Supplemental Contract of Employment"), a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit "5"**.  The Supplemental Contract of Employment materially improved the financial position of Bandas in the following respects:

   a.   The contingent fee was raised from 33% to 45%;

   b.   Bandas' obligation to pay 1/3rd of the expenses out of his portion of the recovery became an obligation payable out of ROWMEC's portion of the recovery;

   c.   In the event the recovery was insufficient to allow ROWMEC to reimburse Bandas for the full amount of the expenses paid by Bandas, ROWMEC would remain obligated to reimburse Bandas for such expenses.   In the original Contract of Employment, ROWMEC was not liable for such expenses.

There was no or inadequate consideration flowing to ROWMEC under the Supplemental Contract of Employment.

D.     *The Deal With Cambridge*

42.     On October 18, 2007, but dated September 28, 2007, ROWMEC entered into an "Agreement Assigning Interest in Settlement, Security Agreement With Limited Irrevocable Power of Attorney" with Defendant Cambridge ("Agreement Assigning Interest").   A true and correct copy of the Agreement Assigning Interest is attached hereto and incorporated herein by reference as **Exhibit "6"**.  In the Agreement Assigning Interest,

   a.   The following consideration flowed from Cambridge to ROWMEC: Cambridge agreed to transfer to or for the benefit of ROWMEC $785,525 on the Funding Date. Actually, two wire transfers were effected transferring to ROWMEC $695,000 on October 25, 2007.  The wire transfers came from a New York bank, JPMorgan Chase Bank, N.A.   The balance of the $785,525, $90,525, was allegedly paid to an un-

disclosed broker - $85,000;[2] for various unspecified review fees - $525.00; and Cambridge's attorney fees - $5,000.

b.  In exchange, the following consideration flowed from ROWMEC to Cambridge:

  i.  ROWMEC agreed to pay Cambridge a Guaranteed Return on Investment ("ROI") of $1,052,077.24 on or before 180 days from the Funding Date plus a penalty accruing at the rate of 4.99% per each successive 30 day period thereafter times the difference between $1,052,077.24 and the principal amount actually received by Cambridge through the first day of each such successive thirty (30) day period thereafter, compounded as of the last day of each such successive 30 day period thereafter, until the $1,052,077.24 plus all penalty amounts have been paid in full.

  ii.  ROWMEC assigned and sold an interest in the Recovery in the Gyro-Trac Law Suit to Cambridge.

  iii.  ROWMEC provided further security in the form of a security interest in the Inventory and Equipment owned by ROWMEC, estimated at the time to be in the approximate amount of $600,000;

  iv.  ROWMEC provided further security in the form of real estate mortgages on two tracts of land upon which it operated its business, estimated at the time to have a net value of $539,589;

In summary, ROWMEC received $695,000 and in return gave Cambridge a promise to pay Cambridge $1,052,077.24 in 180 days that was fully secured by liens on ROWMEC's real estate, equipment and inventory and an assignment of an interest in the recovery in the Gyro-Trac Law Suit.  The profit contracted for by Cambridge, $357,077.24, just for the first 180 days bore an effective annual interest rate of 102.8%.  As of the date of the payment of the $1,403,814.60 to Cambridge on February 18, 2009, the effective annual interest rate was approximately 153%. Stated another way, ROWMEC received from Cambridge what Cambridge referred to as an "investment" of $695.000.00 on October 25, 2007, that was fully secured by ROWMEC's business assets and real estate, and 482 days later, ROWMEC returned to Cambridge its

---

[2] ROWMEC believes that the broker paid by Cambridge was David Solomon.  Solomon claims he only received $75,000.00.

$695,000 plus a profit of $708,814.60 for what appears to have been a fully secured, virtually risk free investment.

**E.      The Letter of Credit and Fifth Circuit Affirms on Final Judgment**

43.      On or about April 16, 2008, Gyro-Trac caused the Bank of Montreal to open a $3,600,000.00 letter of credit in order to supersede the Final Judgment while on appeal.

44.      On December 18, 2008, following oral argument, the Fifth Circuit Court of Appeals issued an opinion affirming in all respects the Final Judgment.

**F.      O'Hagans' Demand that Bandas Pursue the Claim for Commissions Due Under ¶5 of the 2003 Settlement Agreement**

45.      On several later occasions, in 2007, after the Final Judgment was entered, and in 2008, both before and after Gyro-Trac posted the $3,600,000.00 letter of credit in April of 2008, John P. O'Hagan, Sr., the president of ROWMEC, requested that Bandas proceed with ROWMEC's lawsuit against Gyro-Trac to recover unpaid commissions under paragraph 5 of the 2003 Settlement Agreement.    Bandas failed to make good on his representations to Mr. O'Hagan that, post-Final Judgment, ROWMEC could pursue its claim for commissions due under paragraph 5 of the 2003 Settlement Agreement against Gyro-Trac.

46.      Mr. O'Hagan telephoned Bandas and Meyer on numerous occasions after the Fifth Circuit affirmed the Final Judgment on December 18, 2008, inquiring when the new lawsuit against Gyro-Trac would be filed to pursue the claim for commissions due under paragraph 5 of the 2003 Settlement Agreement.  Meyer returned the phone call on January 5, 2009, and told Mr. O'Hagan that he would consult with Bandas and get back to him not later than January 6, 2009.  Neither Bandas nor Meyer ever returned the phone call.

47.     On January 8, 2009, ROWMEC's new attorney, Christopher R. Johnston, wrote a letter to Bandas, Meyer and Shackelford alerting them to the fact that ROWMEC disputed their planned distribution of the proceeds of the $3,600,000.00 letter of credit.

**G.      The State Court Case and Events Leading Up to Its Filing**

48.     On January 8, 2009, after receiving notice from ROWMEC that it disputed the fee of Bandas, Bandas instituted a lawsuit in the 113th Judicial District Court, Harris County, Texas, Cause No. 2009-01433, seeking a declaratory judgment and interpleader of the $3,600,000 letter of credit (the "State Court Case").

49.     On February 2, 2009, after the $3,600,000 letter of credit had been deposited into the registry of court in the State Court Case, the court entered an order permitting the parties to withdraw the $3,600,000 letter of credit for purpose of presentment.  The February 2, 2009, order also ordered Bandas to receive the proceeds from the $3,600,000 letter of credit, deliver to Cambridge the portion of the recovery due to it under the Assignment and Security Agreement, and then deposit the remaining funds into the registry of the 113th Judicial District Court.

50.     On February 18, 2009, Bandas deposited $2,196,185.40 into the registry of the 113th Judicial District Court.  On information and belief, Plaintiff believes that the balance of the $3,600,000.00, $1,403,814.60, was wire transferred from Bandas to Cambridge on or about February 18, 2009.

51.     On the same date, ROWMEC filed a counterclaim and third-party claims against Bandas, Meyer and Shackelford alleging deceptive trade practice violations, negligent misrepresentation, common law fraud, negligence, breach of fiduciary duty, and breach of duty of good faith and fair dealing.

52.     On March 13, 2009, the court in the State Court Case entered an Order Granting Plaintiff Bandas Law Firm, PC's Motion for Partial Summary Judgment.  In the order, the Court recited that proper notice of the motion had been given to ROWMEC, but that ROMEC did not file a response to the motion.  Inexplicably, ROWMEC's then attorneys, Christopher R. Johnston and Robert J. Lowe, Jr., did not respond to the motion for partial summary judgment, and did not appear at the hearing on the motion.  As a consequence, the court in the State Court Case ordered the release to Bandas from the registry of the court of $1,620,000, representing 45% of $3,600,000,00, leaving a balance in the court registry of  $576,185.40.

53.     On April 8, 2009, ROWMEC engaged Mark W. Long to file a Motion for Reconsideration of the partial summary judgment entered by the court.  No order appears on the docket granting or denying such motion as of the date of the filing of this pleading.

54.     On April 16, 2009, the court in the State Court Case entered a docket control order setting the State Court Case for trial on November 2, 2009.

55.     On June 19, 2009, Cambridge filed a First Amended and Partially Unopposed Motion to Release Monies Currently in the Registry of the Court in the State Court Case.  In this motion, Cambridge recited the following:

> "Cambridge and Attorneys entered into a Letter Agreement whereby Cambridge has transferred its rights in, among other things, the Agreement Assigning Interest in Settlement, Security Agreement With Limited Irrevocable Power of Attorney to the Bandas Law Firm in exchange for a release to Cambridge of the amount of $323,000.00 from the Registry of the Court."

Cambridge requested that the court release to it the sum of $323,000,00, on top of the $1,403,814.60 it had already received.  Plaintiff has received from counsel for Cambridge an undated and partially signed copy of the alleged letter agreement, and it is attached hereto and incorporated herein as **Exhibit "7"**.

56.     On July 7, 2009, Bandas filed two no evidence motions for summary judgment attempting to dispose of the claims raised by ROWMEC in its counterclaim and third-party claims against Bandas, Meyer and Shackelford alleging deceptive trade practice violations, negligent misrepresentation, common law fraud, negligence, breach of fiduciary duty, and breach of duty of good faith and fair dealing filed on February 18, 2009.

57.     On July 13, 2009, ROWMEC filed the captioned chapter 11 proceeding and filed a Suggestion of Bankruptcy in the State Court Case.

## IV.  CAUSES OF ACTION

A.      *Count I - Fraudulent Transfer (11 U.S.C. §§ 548, and 550) Against Cambridge*

58.     Plaintiff ROWMEC repeats and re-alleges the allegations contained in all prior paragraphs, which are incorporated by reference as if set forth fully herein.

59.     At the time Cambridge paid ROWMEC $695,000 on or about October 25, 2007, ROWMEC was insolvent or became insolvent as a result of the obligations ROWMEC incurred under the Agreement Assigning Interest.

60.     ROWMEC did not receive reasonably equivalent value in exchange for the obligations it incurred to Cambridge under the Agreement Assigning Interest.  ROWMEC received $695,000 and in return gave Cambridge a promise to pay Cambridge $1,052,077.24 in 180 days that was fully secured by liens on ROWMEC's real estate, equipment and inventory and an assignment of an interest in the recovery in the Gyro-Trac Law Suit.  The profit contracted for by Cambridge, $357,077.24, just for the first 180 days bore an effective annual interest rate of 102.8%.  As of the date of the payment of the $1,403,814.60 to Cambridge on February 18, 2009, the effective annual interest rate was approximately 153%.  Stated another way, ROWMEC received from Cambridge what Cambridge referred to as an "investment" of

$695.000.00 on October 25, 2007, that was fully secured by ROWMEC's business assets and real estate, and 482 days later, ROWMEC returned to Cambridge its $695,000 plus a profit of $708,814.60 for what appears to have been a fully secured, virtually risk free investment. ROWMEC seeks to recover the difference between the $1,403,814.60, which Plaintiff, on information and belief, believes was wire transferred from Bandas to Cambridge on or about February 18, 2009, and the $695,000 paid to ROWMEC on October 25, 2007, plus interest at 6%. ROWMEC also seeks to set aside:

(a) Any interest Cambridge may have in the Agreement Assigning Interest;

(b) All rights in and to the Final Judgment;

(c) All rights in and to that Limited Irrevocable Power of Attorney dated September 28, 2007, between Cambridge and ROWMEC;

(d) That certain deed of trust ROWMEC granted in favor of Cambridge executed on October 19, 2007, filed for record on January 16, 2009, in the Montgomery County, Texas, Real Property Records, under Clerk's File No. 2009-004080, covering the two tracts of land owned by ROWMEC;

(e) All rights in and to that certain Notice of Assignment, Irrevocable Direction of Payment and Authorization executed by ROWMEC dated September 28, 2007 to Bandas; and

(f) the security interest granted by ROWMEC in favor of Cambridge on ROWMEC's inventory and equipment perfected by a UCC Financing Statement filed on November 6, 2007, with the Texas Secretary of State;

61.     To the extent Bandas is a transferee of the interests of Cambridge described in the paragraph next above, ROWMEC seeks to recover such interests from Bandas under 11 U.S.C. § 550(a)(2). ROWMEC will show that Bandas is not a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the violability of the transfer avoided. Bandas told ROWMEC immediately before the

Agreement Assigning Interest was executed that the transaction was flawed and could easily be set aside.

**B.      *Count II - Fraudulent Transfer (11 U.S.C. §§ 548, and 550) Against Bandas***

62.     Plaintiff ROWMEC repeats and re-alleges the allegations contained in all prior paragraphs, which are incorporated by reference as if set forth fully herein.

63.     At the time Bandas and ROWMEC executed the Supplemental Contract of Employment (**Exhibit "5"**), ROWMEC was either:

        (a)  Insolvent; or

        (b)  was engaged in business or a transaction (the Cambridge transaction), or was about to engage in a transaction (the Cambridge transaction), for which any property remaining with ROWMEC was an unreasonably small capital; or

        (c)  made such transfer to or for the benefit of an insider (Bandas), or incurred such obligation to or for the benefit of an insider (Bandas), under an employment contract and not in the ordinary course of business.

64.     ROWMEC did not receive reasonably equivalent value in exchange for the obligations it incurred to Bandas under the Supplemental Contract of Employment.  When principals of ROWMEC agreed to execute the Supplemental Contract of Employment, they believed that ROWMEC's claim for commissions under paragraph 5 of the 2003 Settlement Agreement was alive and that Bandas would pursue such claim.  Bandas failed to pursue the commissions claim, and part of such claim may now be barred by limitations or the doctrine of *res judicata*.  Had the principals of ROWMEC known that ROWMEC's commission claims had been compromised by the negligence of Bandas and Curfiss culminating in the prior ruling on ROWMEC's motion for summary judgment or that such claims were potentially barred, either partially or wholly, by the entry of the Final Judgment, they never would have executed the Supplemental Contract of Employment.

65.     ROWMEC seeks to recover the difference between the 45% contingency granted under the Supplemental Contract of Employment and the 38 1/3rd % contingency granted in the Contract of Employment.  As applied to the $1,620,000 received by Bandas in April 2009, which was 45% of the $3,600,000 recovered from Gyro-Trac, ROWMEC requests that Bandas be ordered to return to the estate  $240,120.00, which is $1,620,000 minus $1,379,880.00 (38 1/3rd % of $3,600,000.00).

66.     ROWMEC seeks to set aside the Supplemental Contract of Employment and the 45% contingency fee granted therein as to all future recoveries under the Final Judgement.

**C.     Count III – Breach of 2003 Settlement Agreement by Gyro-Trac**

67.     Gyro-Trac has breached paragraph 5 of the 2003 Settlement Agreement.

68.     Bandas and Curfiss have represented to ROWMEC that ROWMEC has claims for commissions due under paragraph 5 of the 2003 Settlement Agreement for any cutter head and cutter teeth products sold by Gyro-Trac regardless of whether such cutter head and cutter teeth products used designs developed by ROWMEC.

69.     Bandas, Shackelford and Meyer have represented to ROWMEC that such commission claims have survived the entry of the Final Judgment and may now be asserted.

70.     ROWMEC believes that the damages for Gyro-Trac's breaches of paragraph 5 of the 2003 Settlement Agreement are at least $2,000,000 but the exact amount cannot be determined without discovery of certain information from Gyro-Trac.

71.     ROWMEC also requests attorney fees allowable under Texas law for breach of contract.

**D.     Count IV – Breach of Fiduciary Duty as Against Curfiss, Bandas, Meyer and Shackelford**

72.     Plaintiff ROWMEC repeats and re-alleges the allegations contained in all prior paragraphs, which are incorporated by reference as if set forth fully herein.

73.     Curfiss and Bandas represented to ROWMEC that paragraph 5 of the 2003 Settlement Agreement, which they were responsible for negotiating and drafting, provided for commissions to be paid by Gyro-Trac to ROWMEC for any cutter head and cutter teeth products sold by Gyro-Trac regardless of whether such cutter head and cutter teeth products used designs developed by ROWMEC.

74.     If it is determined that this is not the case, then the 2003 Settlement Agreement was negligently drafted because of the use of initially capped words in paragraph 5 for the term "Cutter Head and Cutter Teeth Products".  By using initially capped words for such phrase, it was then arguably a phrase that was defined in paragraph 4 as cutter head and cutter teeth products using designs developed by ROWMEC, as the Magistrate Johnson determined in her Memorandum and Recommendation adopted by the district court.

75.     If Magistrate Johnson's Memorandum and Recommendation as adopted by the district court is binding on ROWMEC in this case, Bandas and Curfiss induced ROWMEC into entering into the 2003 Settlement Agreement by representations that it had characteristics and granted rights to ROWMEC that said agreement did not have.  Bandas and Curfiss knew or should have known this.

76.     If Magistrate Johnson's Memorandum and Recommendation as adopted by the district court is binding on ROWMEC in this case, Bandas induced ROWMEC into entering into the Contract of Employment by representing that the 2003 Settlement Agreement had characteristics and granted rights to ROWMEC that said agreement did not have.  Bandas knew or should have known this.

77.    Bandas and Curfiss, who at the time had been engaged by ROWMEC to act as an expert witness in the Gyro-Trac II Law Suit, never advised their client that Magistrate Johnson in her Memorandum and Recommendation adopted by the district court denied ROWMEC's motion for partial summary judgment, and in so doing clearly found that the use of initially capped words in paragraph 5 meant that the commission was only payable on cutter head and cutter teeth products using designs developed by ROWMEC.

78.    When Meyer and Shackelford were engaged in early May 2007, before the commencement of the trial, they became fully aware of what had transpired in the case vis-a-vis the Memorandum and Recommendation entered by Magistrate Johnson and adopted by the district court. Bandas, Meyer and Shakelford dropped ROWMEC's commission claim, which ROWMEC's damages expert had opined was in excess of $1,950,203.00, and never advised their client, ROWMEC, as to why such claims had abandoned.

79.    After the trial started, the principals of ROWMEC realized that ROWMEC's claim for commissions under paragraph 5 of the 2003 Settlement Agreement was no longer being pursued by its attorneys.  When ROWMEC's principals confronted Bandas in the presence of Meyer and Shackelford, he told the ROWMEC principals that he had dropped the claim for commissions due under paragraph 5 of the 2003 Settlement Agreement because he was afraid that the jury would get confused.  Bandas assured the principals of ROWMEC in the presence of Shackelford and Meyer that ROWMEC could re-file said claim against Gyro-Trac at a later date, and that Bandas, Meyer and Shackelford would pursue the claim at a later date.

80.    If Magistrate Johnson's Memorandum and Recommendation as adopted by the district court is binding on ROWMEC in this case, then Bandas, Shackelford and Meyer knew that ROWMEC's commissions claim had been severely compromised by the ruling of Magistrate

Johnson in her Memorandum and Recommendation that had been adopted by the district court. If this Court determines that ROWMEC's claims for commissions are barred in whole or in part by the entry of the Final Judgment, then Bandas, Shackelford and Meyer knew that by submitting a question to the jury on whether the 2003 Settlement Agreement had been complied with by Gyro-Trac, and by failing to submit a question on commissions damages flowing from Gyro-Trac's failure to comply with the 2003 Settlement Agreement, that such claims might be wholly or partially barred by the entry of the Final Judgment.

81.     Notwithstanding numerous requests made by ROWMEC's principals to Bandas and Meyer in 2007 and 2008, after the Final Judgment had been entered, Bandas, Meyer and Shackelford failed to proceed forward with ROWMEC's claim for commissions due under paragraph 5 of the 2003 Settlement Agreement and would not tell ROWMEC the real reason why they were reluctant to do so.

82.     As a result of Bandas, Shackelford and Meyer's refusal to pursue ROWMEC's commissions claim against Gyro-Trac, even if such claims did survive the entry of the Final Judgment, if some of such claims are now potentially barred by the four year statute limitations, then Bandas, Shackelford and Meyer have breached their fiduciary duties to ROWMEC by failing to pursue such claims on a timely basis as they agreed so to do.

83.     If this Court determines that some or all of ROWMEC's commission claims are now barred, then the conduct of Bandas, Curfiss, Meyer and Shackelford, as described above, constitutes a breach of fiduciary duties these lawyers owed to ROWMEC.

84.     For these reasons, ROWMEC asks the Court to set aside the Contract of Employment, as supplemented, and order that the fees received by Bandas, Curfiss, Meyer and Shackelford both in the Gyro-Trac I Law Suit and the Gyro-Trac II Law Suit be disgorged.

85.     ROWMEC also asks the Court to award damages in an amount yet to be determined depending upon whether some or all of the claim for damages ROWMEC has suffered under paragraph 5 of the 2003 Settlement Agreement have been lost due to the actions and inactions of Bandas, Curfiss, Meyer and Shackelford as described above.

86.     Additionally, had the principals of ROWMEC known about the above events, they never would have entered into the Cambridge transaction, which resulted in damages equal to the profit paid to Cambridge in the amount of $708,814.60.

E.     *Count V – Professional Negligence as Against Curfiss, JW, Bandas, Meyer and Shackelford*

87.     Plaintiff ROWMEC repeats and re-alleges the allegations contained in all prior paragraphs, which are incorporated by reference as if set forth fully herein.

88.     For the same reasons, the conduct of Curfiss, JW, Bandas, Meyer and Shackelford constitutes professional negligence.

89.     At the time Curfiss negotiated and drafted the 2003 Settlement Agreement, he was a partner with JW, acting within the course and scope of his employment and position as partner of JW.  JW would, therefore, be liable for any damages suffered by ROWMEC as a result of the drafting mistake made by Curfiss in paragraph 5 of the 2003 Settlement Agreement and the loss of ROWMEC's claim for commissions for cutter head and cutter teeth products using designs other than those developed by ROWMEC.

90.     ROWMEC also asks the Court to award damages in an amount yet to be determined depending upon whether some or all of the claim for damages ROWMEC has suffered under paragraph 5 of the 2003 Settlement Agreement have been lost due to the actions and inactions of Bandas, Curfiss, JW, Meyer and Shackelford as described above.

91.     Additionally, had the principals of ROWMEC known about the above events, they never would have entered into the Cambridge transaction, which resulted in damages equal to the profit paid to Cambridge in the amount of $708,814.60.

**F.      *Count VI – Preferential Transfer (11 U.S.C. §§ 547 and 550) Against Bandas, Meyer and Shackelford***

92.     Upon setting aside the Contract of Employment, as prayed for above, the claims of Bandas, Meyer and Shackelford become unsecured, if they exist at all.

93.     The payment of $1,620,000 to Bandas in April 2009, was a preference under 11 U.S.C. § 547(b).  The payment was made while ROWMEC was insolvent.  The payment was on or within 90 days before the July 13, 2009, filing date, or between 90 days and one year before the July 13, 2009 filing date, and Bandas, Meyer and Shackelford were insiders of ROWMEC.  Bandas, Meyer and Shackelford received more than they would have received in a chapter 7 case had the transfer not been made.

94.     To the extent Meyer and Shackelford are transferees of the of the funds received by Bandas described in the paragraph next above, ROWMEC seeks to recover such funds from Meyer and Shackelford under 11 U.S.C. § 550(a)(2).  ROWMEC will show that Meyer and Shackelford are not transferees who took such funds for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided.

**G.      *Count VII - Equitable Subordination (11 U.S.C. § 510)***

95.     ROWMEC repeats and re-alleges the allegations contained in all prior paragraphs, which are incorporated by reference as if set forth fully herein.

96.     The conduct of all of the Defendants, as alleged above, constitutes inequitable conduct.

97.     By reason of the conduct of the Defendants, ROWMEC became insolvent and was unable to satisfy its obligations to its general creditors, thereby harming the Debtor's general unsecured creditors and the shareholders of the Debtor.

98.     Allowing the Defendants to receive any payment on their claims or any claims which they purport to assert prior to the general unsecured creditors or the interests of the shareholders of ROWMEC would be unfair and inequitable.

99.     Equitable subordination of the claims of the Defendants is consistent with the Bankruptcy Code.

100.     Because of the transactions and actions described herein, the claims of the Defendants should be equitably subordinated to all general unsecured claims and the shareholders of ROWMEC pursuant to section 11 U.S.C. § 510.

**H.     Count VIII – Fraud as to Bandas, Curfiss, Meyer and Shackelford**

101.     ROWMEC repeats and re-alleges the allegations contained in all prior paragraphs, which are incorporated by reference as if set forth fully herein.

102.     The actions of Defendant Bandas, Curfiss, Meyer and Shackelford, as described above, constitute fraud under the law of Texas.  Failure to disclose information is fraud when a person has the duty to disclose.  Bandas, Curfiss, Meyer and Shackelford had a duty of full disclosure.

103.     At a minimum, Meyer and Shackelford remained silent while Bandas made these false representations.  They had knowledge that such representations were false.  They had a duty to ROWMEC as its attorneys of full disclosure.  Yet they did nothing.  By engaging in such

activities, Meyer and Shackelford joined in a conspiracy with Bandas to defraud ROWMEC or aided and abetted Bandas in his fraudulent activities.

104.   Bandas, Meyer and Shackelford were desperate to get their fees paid out of the $3,600,000 letter of credit, and were motivated to engage in such fraudulent activities as a result of their desperation.

105.   For these reasons, ROWMEC asks the Court to set aside the Contract of Employment, as supplemented, and order that the fees received by Bandas, Curfiss, Meyer and Shackelford both in the Gyro-Trac I Law Suit and the Gyro-Trac II Law Suit be disgorged.

106.   ROWMEC also asks the Court to award damages in an amount yet to be determined depending upon whether some or all of the claim for damages ROWMEC has suffered under paragraph 5 of the 2003 Settlement Agreement have been lost due to the actions and inactions of Bandas, Curfiss, Meyer and Shackelford as described above.

107.   Additionally, had the principals of ROWMEC known about the above events, they never would have entered into the Cambridge transaction, which resulted in damages equal to the profit paid to Cambridge in the amount of $708,814.60.

**I.    Count IX –    Breach of Contract by Bandas, Meyer and Shackelford**

108.   Bandas and ROWMEC entered into the Contract of Employment, as supplemented.   By written agreements among Bandas, Meyer and ROWMEC, and Bandas, Shackelford and ROWMEC, Meyer and Shackelford were brought into the case in May 2007 to assist in the representation of ROWMEC in Gyro-Trac II Law Suit.   By virtue of such agreements,  Bandas, Meyer and Shackelford agreed to pursue claims for breach of the 2003 Settlement Agreement, including ROWMEC's claim for lost commissions under paragraph 5 of the 2003 Settlement Agreement.   During the trial in June 2007, of the Gyro-Trac II Law Suit,

Bandas, in the presence of Meyer and Shackelford, represented to principals of ROWMEC that the claims of ROWMEC for lost commissions under paragraph 5 of the 2003 Settlement Agreement would be pursued after the trial was completed.   On numerous occasions, as described hereinabove, ROWMEC requested that its attorneys, Bandas, Meyer and Shackelford, pursue such claims, to no avail.

109.    As a result of the actions or inactions of Bandas, Meyer and/or Shackelford, some or all of such claims may now be barred.  To the extent that such claims have been barred by the actions or inactions of Bandas, Meyer and/or Shackelford, ROWMEC has suffered actual damages in an amount yet to be determined.

**J.**       ***Count X – The Defective Acknowledgement in the Deed of Trust (11 U.S.C. § 544(a))***

110.    On January 16, 2009, Cambridge filed that certain deed of trust ROWMEC granted in favor of Cambridge executed on October 19, 2007, filed for record in the Montgomery County, Texas, Real Property Records, under Clerk's File No. 2009-004080, covering the two tracts of land owned by ROWMEC (the "Deed of Trust"), a true and correct copy of which is attached hereto as **Exhibit "8"**.

111.    The acknowledgement used in the Deed of Trust is defective under Texas law.

112.    Texas law provides that where a defect in the acknowledgement of a deed or deed of trust does appear on the face of the certificate, a record of the instrument is not effectual as constructive notice.

113.    ROWMEC hereby asserts its rights under 11 U.S.C. § 544(a) to avoid the Deed of Trust and to set it aside.

## V.   PUNITIVE DAMAGES

114.    The law of Texas also imposes *punitive damages* upon a fiduciary who breaches his fiduciary duties.  Malice is not a required element of exemplary damages where there is an intentional breach of fiduciary duty.  Curfiss, Bandas, Meyer and Shackelford's fraud and active concealment as described above were blatant and intentional breaches of fiduciary duties.  The actions of these Defendants show bad faith.  The Court should award against Bandas, Meyer and Shackelford punitive damages as well as compensatory damages.

## VI.  ACCOUNTING AND REASONABLENESS AND NECESSITY OF EXPENSES

115.    ROWMEC also seeks an accounting of the expenses charged to ROWMEC by Curfiss, Bandas, Meyer and Shackelford and a determination of whether they were reasonable and necessary.

## VII. ATTORNEY FEES

116.     ROWMEC also seeks recovery of reasonable and necessary attorney fees incurred by ROWMEC in prosecuting this suit as against all Defendants, as authorized under and to the fullest extent permitted under Texas law and the Bankruptcy Code.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, ROWMEC, Plaintiff herein, respectfully prays that the Court, after a trial on the merits,

a.     Avoid the fraudulent conveyances and preferences described herein;
b.     award damages against Gyro-Trac for breach of the 2003 Settlement Agreement;
c.     award actual damages for the fraud and breach of fiduciary duties as requested herein;
d.     equitably subordinate the claims of the Defendants as requested herein;
e.     award disgorgement for breach of fiduciary duties as requested herein;
f.     award punitive damages;
g.     order an accounting;
h.     award attorney fees;
i.     award pre and post judgment interest; and
j.     award such other and further relief as is just.

Respectfully submitted this 5th day of August 2009.

/s/ Robert L. Pendergraft
Robert L. Pendergraft, Esq.
TBN: 15743500; SDOT: 00730
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 737-8213 (Direct)
(713) 868-1267 (Main Fax)
rlp@pendergraftsimon.com
**ATTORNEY IN CHARGE FOR PLAINTIFF**


/s/ Leonard H. Simon
Leonard H. Simon, Esq.
TBN: 18387400; SDOT: 8200
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas  77019
(713) 737-8207 (Direct)
(832) 202-2810 (Direct Fax)
lsimon@pendergraftsimon.com
**CO-COUNSEL FOR PLAINTIFF**

**OF COUNSEL:**
PENDERGRAFT & SIMON
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas  77019
(713) 528-8555 (Main)
(713) 868-1267 (Main Fax)