**AGREEMENT ASSIGNING INTEREST IN SETTLEMENT, SECURITY AGREEMENT WITH LIMITED IRREVOCABLE POWER OF ATTORNEY**

THIS AGREEMENT (hereinafter" Security Agreement") is made and entered into on September 28, 2007 by, between and among CAMBRIDGE MANAGEMENT GROUP, LLC ("CMG"), a Delaware corporation, and its successors and/or assigns, having its principal office located at 125 State Street, Suite 100, Hackensack, NJ 07601, and RIGHT OF WAY MAINTENANCE EQUIPMENT COMPANY, INC. ("ROWMEC"), having its principal office located at 11443 Old Hwy 105 East , Conrone, TX 77303, and its successors and/or assigns, and the BANDAS LAW FIRM ("Attorneys"), with a principal office located at 500 N. Shoreline Blvd Suite 1020, Corpus Christi, Texas 78471.

**RECITALS:**

A. ROWMEC is in the business of assembling, installing, maintaining and providing certain equipment to be used in conjunction with the operation of tractor s.

B. ROWMEC has commenced an action currently in litigation captioned as Right of Way Maintenance Company, Inc. v. Gyro-Trac, Inc. and Gyro-Trac USA, Inc., et al. Index No. 05-4081 (U.S.D.C. S.D.Texas) ("the Litigation"), arising out of a breach or breaches by Gyro-Trac, Inc. and/or Gyro-Trac USA, Inc., the defendants therein ("the Defendants") of a certain contract with ROWMEC, dated September 13, 2003; in the Litigation, wherein ROWMEC sought the damages arising out of said breaches; a true copy of the first page of the most-recently filed complaint in the Litigation is annexed hereto and made part hereof as "Schedule A."

C. The current status of the Litigation is as follows: On or about June 12, 2007 ROWMEC recovered a judgment against the Defendants of approximately $3.6 million ("the Judgment") in the Litigation but collection of funds, whether as proceeds of the Judgment or through any other form of recovery, e.g., a settlement or otherwise (collectively a "Recovery") has been delayed.

D. Attorneys are a firm of duly-licensed members of the Bar of the State of Texas and counsel of record for ROWMEC in the Litigation

E. There is substantial degree of risk that a Recovery may be further delayed for an extended substantial period of time through the actions of Defendants, or may not be realized at all as a result of, inter alie, a vacating on appeal of the Judgment, frustration of collection of the Judgment by Defendants, and/or Defendants' failure to negotiate and offer in good faith a settlement which ROWMEC considers fair and reasonable.

F. Because of both the delay in concluding the Litigation, the expenses incurred in connection with the Litigation, and the injuries to its business caused by the breaches of Defendants which are subjects of the Litigation, ROWMEC is suffering a shortage of working capital.

G. ROWMEC recognizes that because it may take an extended and indeterminate amount of time to achieve a Recovery it deems reasonable, and that unless its immediate needs for working capital and additional funds to maintain its position in the Litigation are met,

Certified Document Number: 40678460 - Page 1 of 28

its abilities both to secure a fair and reasonable amount as a Recovery and its ability to operate its business until then will be substantially compromised.

H. CMG is in the business, inter alia, of purchasing legal receivables and investing in the anticipated proceeds of recoveries in m atters in litigation.

I. ROWMEC is desirous of immediately receiving a lump sum cash payment both to secure operating capital and to sustain its efforts in the Litigation until a fair and reasonable Recovery in the Litigation can be achieved, in consideration for selling and assigning the right to receive certain monies ROWMEC would be entitled to receive out of the proceeds of a Recovery.

J. ROWMEC has contacted CMG and has offered to CMG, in consideration for an investment by CMG in the form of such a lump sum payment, an interest in the proceeds of the Recovery anticipated in the Litigati on.

H. CMG is prepared to make such an investment in the amount of $785,525 ("the Funding") to be paid to ROWMEC, in consideration for (i) the assignment and sale by ROWMEC to CMG of an interest in a Recovery in the Litigation in order to yield to CMG a certain return on its investment, and (ii) ROWMEC providing further security in the forms of (a) a security interest in the inventory and equipment of ROWMEC and (b) a deed(s) of trust or mortgage(s) upon certain real property owned by ROWMEC (collectively "the Additional Security") to which CMG shall have recourse in the event a Recovery is not achieved within a certain period of time, or the Judgment is vacated on appeal, or the Recovery is insufficient amount to fund the return on investment promised to CMG in the within agreement, and (iii) the undertaking of the Attorneys to honor and effectuate the terms of the assignment, and pay over to CMG out of a Recovery such monies as are assigned to CMG in the event that, or to the extent that the proceeds of the Recovery are received by the Attorney, as provided fo r hereinafter.

**NOW, THEREFORE,** in consideration of the mutual promises and covenants contained herein, the sufficiency of which are hereby acknowledged, the par ties agree as follows:

1. <u>Recitals</u>. The Recitals set forth above are incorporated into this Agreement and are hereby made a part thereof; to the extent of a party's knowledge with respect thereto at the time of execution of the within agreement, they each affirm to the other that the assertions set forth therein ar e true and correct.

2. <u>Definitions</u>. For the purposes of this Agreement, the following terms shall mean as follows:

   a. "A Recovery" or "the Recovery" shall refer only to the net amount of money actually available to ROWMEC upon a conclusion of the Litigation in its favor, that is, the amount remaining after satisfaction from the proceeds of the Litigation of all attorney's fees, reimbursement of litigation costs, and payment of all litigation expenses, and satisfaction of all liens arising as a matter of law, taxes, encumbrances and/or claims which are charges thereupon.

   b. "Guaranteed Return on Investment" (or "ROI") as used hereinafter, shall mean that amount of money in US dollars which CMG shall be entitled to receive at

Certified Document Number: 40678460 - Page 2 of 28

such time as it is fully paid per the terms of this Agreement, inclusive of all penalties, to be determined as follows, as a result of the lien in favor of CMG, and security interest in a Recovery created by the sale, assignment, conveyance and pledging thereof by ROWMEC per the terms of the within agreement, which security interest and lien is to be recorded through a Financing Statement duly filed under the provisions of Article 9 of the Uniform Commercial Code in force in Texas and all other jurisdictions designated by CMG; the amount of the ROI shall be calculated as follows:

i. The ROI shall be in the amount of $1,052,077.24 ("the Base ROI"), if the Base ROI paid to CMG in full on or before 180 days from the Funding Date;

ii. If the Base ROI is not received by CMG in full on or before 180 days from the Funding Date, the amount of the total of the ROI shall be the sum $1,052,077.24, plus a penalty accruing at the rate of 4.99% per each successive 30 day period thereafter times the difference between $1,052,077.24 and the principal amount actually received by CMG through the first day of each such successive thirty (30) day period thereafter, compounded as of the last day of each each such successive 30 day period thereafter, until both the Base ROI and all penalty amounts have been paid in full.

c. The Purchase Price shall mean $785,525 USD.

d. "Shareholders" shall mean William Stanley O'Hagan, Sr., Joan O'Hagan, William Stanley O'Hagan, Jr., John P. O'Hagan, Sr., and Scott O'Hagan, Sr. individually and their successors and/or assigns.

e. The "Pledged Real Property" shall refer to those two tracts of land located in Montgomery County, Texas, identified as "Tract I" (a 1.997 acre tract), and "Tract II" (a 2.322 acre tract), and owned by ROWMEC (subject to a Deed of Trust on "Tract II") in the title report prepared by Chicago Title Insurance Company, dated September 26, 2007, a true copy of which is annexed hereto and made part hereof as "Schedule C," which Pledged Real Property is to become part of the Added Security and the subject or subjects of a lien in favor of CMG, embodied one or more deed of trust or mortgage from ROWMEC to CMG.

f. "Equipment" shall mean all equipment in all of its forms of ROWMEC, wherever located, including all machinery, manufacturing, research and development, distribution, selling, data processing and office equipment, fixtures, appliances, furniture, furnishings, vehicles, trade fixtures, and other tangible personal property (other than Inventory) and all parts thereof and all accessions, additions, attachments, improvements, substitutions and replacements thereto and therefor and all accessories related thereto, which Equipment is to become part of the Added Security and the subject of a lien in favor of CMG, in the form of a Security Interest in favor of CMG, to be recorded through a Financing Statement duly filed under the provisions of Article 9 of the Uniform Commercial Code in force in Texas and in all other jurisdictions designated by CMG.

Certified Document Number: 40678460 - Page 3 of 28

g. "Inventory" shall mean all inventory in all of its forms of ROWMEC, wherever located, including --

i. all goods, merchandise and other personal property furnished or to be furnished under any contract of service or intended for sale or lease, all consigned goods and other items which have previously constituted Equipment but are then currently being held for sale or lease in the ordinary course of the Borrower's business, all raw materials and work in process therefor, finished goods thereof, and materials used or consumed in the manufacture or production thereof, and all other materials and supplies of any kind, nature or description used or consumed in the manufacture, production, packing, shipping, advertising, finishing or sale thereof,

ii. all goods in which the ROWMEC has an interest in mass or a joint or other interest or right of any kind (including goods in which the Borrower has an interest or right as consignee), and

ii. all goods which are returned to or repossessed by ROWMEC, and all accessions thereto, products thereof and documents therefor.

which Inventory is to become part of the Added Security and the subject of a Security Interest in favor of CMG, to be recorded through a Financing Statement duly filed under the provisions of Article 9 of the Uniform Commercial Code in force in Texas and all other juridictions designated by CMG.

h. The "Funding" shall refer to the actual payment of the Purchase Price, as provided for in this agreement.

i. "The Funding Date" shall refer to same day, or the next business day following the date upon which all instruments and agreements required hereunder, in the forms deemed sufficient by CMG's counsel or CMG's title insurer to create valid and enforceable liens upon a Recovery, the Inventory, the Equipment and the Pledged Real Property, if the forms of same are not provided for among the attached Schedules, have been duly executed, and delivered by ROWMEC to CMG or its counsel, per CMG's written instructions, which in any event must occur on or before October 22, 2007, unless extended in writing by agreement of ROWMEC and CMG.

j. "Successors Attorneys" means any firm or group of licensed attorneys (or any one such attorney) who at any time hereafter during the course of the Litigation becomes ROWMEC's co-counsel or becomes substituted for Attorneys as counsel for ROWMEC in the Litigation.

3. <u>ROWMEC's Promise to Create Liens</u>. ROWMEC hereby promises, covenants and agrees that upon ROWMEC's receipt of the Purchase Price on the Funding date, in consideration therefor,

a. it will set-over, assign, and convey the Recovery to CMG, to the full extent thereof which CMG shall be entitled to receive under the terms of the within

Certified Document Number: 40678460 - Page 4 of 28

agreement, together with liens upon the Additional Security, i.e., the Inventory, the Equipment and the Pledged Real Property, subject to the further conditions and terms set forth hereafter, all of which shall be, and all remain thereafter subject to such liens in favor of CMG, until such time as the ROI is received in full by CMG, in accordance with the terms of this agreement and any other instruments to be executed, and or filed in conjunction with recording and perfection of the liens intended to be created under this agreement, and

b. It will cooperate fully with CMG and CMG's counsel in executing and delivering all additional instruments which may be required in the sole reasonable judgment of CMG or CMG's counsel in order to perfect and perfect CMG's secured position and priority with respect to both a Recovery and the Additional Security.

4. <u>ROWMEC's Representations, Acknowledgements Warranties and Further Promises</u>. ROWMEC

a. Represents and warrants that the Litigation to its knowledge is meritorious and was filed in good faith, and that it knows of no legal basis for the Litigation to be dismissed and/or not to proceed to a Recovery, whether as a result of collection of the Judgment, settlement or other resolution.

b. Represents and warrants that if a Recovery in the current amount of the Judgment is achieved at any time within 30 months following the Funding Date, it will be sufficient to pay CMG the full amount of the ROI;

c Acknowledges that due to the risks inherent in the Litigation, CMG would not undertake the Transaction (i) without the agreement of the Attorneys to undertake on behalf of CMG certain obligations set forth, hereafter with respect to effectuating the payment to CMG from a Recovery of all moneys that may become due CMG hereunder and (ii) without ROWMEC providing the Additional Security;

d. Covenants and agrees that in the event the Attorneys resign or are relieved from further representation of ROWMEC in the Litigation, it will not engage Substituted Attorneys until and unless such attorneys execute an undertaking to adopt and abide by all of the same obligations to CMG agreed to and undertaken by the Attorneys in conjunction with the within agreement;

e. Represents that neither a Recovery in the Litigation nor any of the Additional Security is the subject of any matter, pending or in prospect in any probate or surrogate court, and is not the subject of any will or intestacy dispute;

f. Represents and warrants that it has good title to the rights to the Recovery that is to be assigned, sold and set over to CMG, and owns the Inventory, the Equipment and the Pledged Real Property, free and clear of all liens, claims or interests of others, except as specifically identified in "Schedule B," or in "Schedule C," annexed hereto and made a part hereof;

g. Represents and warrants that it has not entered into any other assignments regarding a Recovery, and covenants that it shall not enter any further

Certified Document Number: 40678460 - Page 5 of 28

assignments of a Recovery without CMG's express written consent, and shall not grant or otherwise cause or suffer the existence of any lien or security interest which is superior to or in conflict with any lien or security interest assigned, created or granted interest hereunder, or that it has hereby promised, covenanted and agreed to create or grant hereunder, without CMG's express written consent, except such liens or security interests as identifed on "Schedules B" and "C";

h. Represents and warrants that there is no reason known to ROWMEC or the Shareholders which could affect either the validity or enforceability of any of this agreement and ROWMEC and the Shareholders know of no contractual or other restrictions or obligations of their own that are inconsistent with the execution of this agreement, the assignment of a Recovery, or the liens upon the Additional Security to be created pursuant to this agreement;

i. Represents and warrants that it has full power and authority to make and execute this Agreement;

j. Represents and warrants that to the best of its knowledge and belief, and to the knowledge and belief of its Shareholders, all of the information provided by or on behhalf of ROWMEC and/or its principals, agents and representatives and the shareholders to CMG and/or its principals, agents and representatives has been correct and complete in all material respects, including all of the information incorporated in the contents of all Schedules made part hereof, and incorporated herein by reference, and aknowledges and agrees that CMG has absolutely relied upon the veracity of such entering in entering into the within agreement and shall continue to rely on same in remitting funds pursuant thereto, and in all further matters pertaining thereto.

k. Represents and warrants that to its knowledge, it is not the subject any legal proceeding, including any bankruptcy proceeding, insolvency proceeding, shareholder suit, or any other action, or matter pending, in prospect or contemplated which seeks the appointment of any trustee or receiver for all or any part of the property or business of that would affect its rights to a Recovery, and such rights have not been, and are not in danger of being, seized and/or levied upon;

l. Represents and warrants that to its knowledge, the Defendants in the Litigation are not the subject of any legal action, bankruptcy proceeding, insolvency proceeding, shareholder suit, or any other action, or matter pending, in prospect or contemplated which seeks the appointment of any trustee or receiver for all or any part of the property or business of the Defendants in the Litigation, which could serve to limit, enjoin, limit, or adversely effect its ability to collect the proceeds of the Judgment, or to enforce any settlement, or other agreement with the Defendants regarding a Recovery in the Litigation;

m. Represents that throughout the course of considering and evaluating the transaction which is embodied in this agreement and before executing and delivering this Agreement and related instruments ROWMEC has been advised by the Attorneys or another independent counsel with respect to ROWMEC's

Certified Document Number: 40678460 - Page 6 of 28

rights and obligations thereunder, and fully understands the ter ms, and rights and obligations, and acting of its own free will and volition, with the benefit of such advice of its counsel in agreeing to all of the terms of the within agreem ent;

n. Further acknowledges that the limited time it may have had to review the within agreement results solely from its own desire that the transaction be consummated as expeditiously as possible;

o. Represents and warrants that it knows of no basis, including any legal defense, as a result of which the within agreement, or any of the obligations or liens created hereunder or under the Security Instruments may be deemed unenforceable in accordance with the terms of the within agreement and the Secuity Instruments;

p. Represents and warrants that there are no other assignments, liens, pledges, encumbrances or security interests of any kind or nature relating to, or affecting in any way ROWMEC's rights, title and interest in a Recovery in the Litigation, with the exception of (i) the attorney's fees and raim bursement of costs, and case preparation expenses to which the Attorneys or the Substituted Attorneys will become entitled to be paid on a priority basis, and (ii) any such other encumbrances as are enumerated in "Schedules B" and C," annexed hereto and made part hereof;

q. Represents and warrants that the state of the title of the Pledge Real Properties, i.e., identified as "Tract I" and "Tract II" on Schedule "C," remains unchanged from the date of pre paration thereof, September 28, 2007;

r. Represents and warrants that it has paid all federal, state and local taxes due through and including this date or has made adequate provision for such payment, and that there are no outstanding tax liens or outstanding and unsatisfied judgm ents against ROWMEC, or its property or any liens owed to the Federal government, nor any City, County or State for any social service or other benefit received and obligated for repayment, and

s. Represents tha it has not been able prior to the execution of the within agreement to induce any other responsible person or entity to purchase an interest in a Recovery, or otherwise provide it with financing or funding in an amount equal to the Purchase Price on terms equal to, or more favorable those provided for hereunder.

5. <u>Security Instruments and Other Instruments Which ROWMEC Must Execute and Deliver in Advance of the Funding Date</u>. Upon the execution of the within agreement, in order for the Funding to occur, within two business days of receiving the forms of the instruments mentioned below from CMG, except to the extent ROWMEC by execution of a power of attorney provided for hereafter has authorized CMG to execute same in its grantors stead. ROWMEC must duly execute and cause to be delivered to CMG, or CMG's counsel, as CMG may direct, all of the following (hereinafter sometimes referred to as "the Security Instruments"):

Certified Document Number: 40678460 - Page 7 of 28

a. One or more UCC Financing ("UCC 1") Statements referencing the within agreement and identifying therein subjects of the liens in favor of CMG created hereunder in the form of security interests in (i) a Recovery, (ii) the Inventory and (iii) the Equipment, in the amount of the ROI, as determined in accordance with this agreement;

b. One or more deeds of trust or mortgages (further securing a payment in the amount of the ROI, as determined in accordance with this agreement) conveying or granting to CMG a first lien position on the lands designated as "Tract I" in "Schedule C," and a second lien position on the lands designated as "Tract II" in "Schedule C," subordinated only to the Deed of Trust dated April 22, 2005 to Tom Geisenschlag, as trustee for ALLTEX INTERIOR SUPPLY, INC., securing a payment in the amount of the ROI, as determined in accordance with this agreement;

c. Any additional instruments reasonably required by CMG's counsel or CMG's title insurer, Chicago Title Insurance Company, in order to perfect the liens intended hereunder to be granted by ROWMEC to CMG, and/or to satisfy the requirements of CMG's title insurer;

d. (i) A duly-executed "Power of Attorney" in the form set forth in, and made a part hereof as "Schedule D," (ii ) duly-executed "Acknowledgement of Attorneys" in the form set forth in, and made a part hereof as "Schedule E," (iii) a duly-executed "Notice Of Assignment, Irrevocable Direction Of Payment And Authorization," in the form set forth in, and made a part hereof "Schedule F," and (iv) the corporate resolution of ROWMEC authorizing the John P. O'Hagan, Sr. of ROWMEC to execute and deliver the within agreement and the related Security Instruments, and all of the other foregoing instruments.

All of the foregoing instruments shall be held in escrow by CMG's counsel, or another duly-licensed attorney-at-law designated by CMG until the Funding Date and payment of the Purchase price, whereupon they shall be released to CMG for recording.

6. <u>Payment of the Purchase Price</u>.

On the Funding Date, the Security Instruments and all other instruments identified in preceding ¶5 shall be released from escrow and delivered to CMG, and CMG shall simultaneously pay over the Purchase Price (i.e., the sum of $785,525 USD) to ROWMEC, or for the account of ROWMEC, as follows:

a. $85,000 shall be remitted by CMG directly to those persons or entities identified (i.e., as "Brokers") in "Schedule G," annexed hereto and made part hereof;

b. $525, representing various review fees and other costs and expenses customarily charged by CMG and also identified on "Schedule G" shall be deducted from the Purchase Price in order to reimburse CMG for such costs;

c. An additional amount (not exceeding $5,000.00) representing the fee of Michael R. Perle, Esq., relating to the preparation of instruments for use in the

Certified Document Number: 40678460 - Page 8 of 28

transaction, which shall be deducted from the Purchase Price and Remitted directly to Michael R. Perle, Esq.;

d. The balance remaining out of the total Purchase Price shall be simultaneously paid on the Funding Date to ROWMEC, or its order, by check or electronic funds transfer, per mutual agreement.

7. <u>Further Promises and Obligations of ROWMEC.</u>

a. At the request of CMG, at any time and from time to time, ROWMEC shall execute such statements and other documents, pay such filing, recording and other fees, and do or cause to be done by its agents, represantaives and attorneys such other acts or things as CMG deems reasonably necessary to establish, protect and continue security positions hereunder.

b. ROWMEC shall pay all cost, expenses, charges and other obligations, including without limitation, reasonable attorney fees, suffered or incurred by CMG to protect, preserve, maintain and obtain possession of, or title to the Recovery, and/or to protect, preserve, maintain or enforce any security interest or lien granted under the within agreement, and/or to enforce or assert any one or more of CMG's rights, powers, remedies and defenses under this Agreement.

c. ROWMEC promises, covenants and agrees that it shall promptly, when requested, execute such additional instruments, and take such further actions as may be reasonably necessary or desirable to perfect and protect the security interests or liens to be granted to CMG hereunder, and

d. ROWMEC shall defend the Recovery and the Additional Security against the claims and demands of all persons other than CMG.

8. <u>Payment to CMG of the Guaranteed Return On Investment.</u>

a. CMG shall be entitled to be paid, and shall be paid the full amount of the ROI, or such lesser amount as has been realized as a Recovery immediately upon such moneys representing a Recovery being received by, or otherwise coming under the control of the Attorneys, the Substituted Attorneys, or ROWMEC, in accordance with the undertaking of the Attorneys provided for hereafter, and ROWMEC shall not be entitled to receive or hold any portion of a Recovery until and unless the full amount of the ROI has previously been paid to CMG.

b. If (i) a Recovery is not achieved within 30 months after the Funding Date, or (ii) a Recovery is received within such 30 month period but is insufficent to repay the ROI to CMG in full, or (iii) the Judgment is vacated on appeal at any time within 30 months from the Funding Date, CMG shall thereupon have full recourse to the Additional Security, and may exercise all of its rights as a secured creditor, mortgagee, and/or trust beneficiary under either the terms of the security instruments, Article 9 of the Uniform Commercial Code, such other applicable law, and under the terms of the within agreement, to sell, liquidate or otherwise utilize the Additional Security in order to achieve payment in full of the ROI, the

Certified Document Number: 40678460 - Page 9 of 28

amount which shall at all times continue to be determined in accordance with ¶ 2(b) above.

c. Upon CMG receiving payment in full of the ROI, whether achieved in accordance with either preceding § "a" or preceding § "b" of this ¶8, it shall thereupon release ROWMEC from any further obligation hereunder, and/or cancel or terminate, as the case may be, all of its remaining security positions relating to the Additional Security, including all Financing Statements, mortgages and/or deeds of trust, or other instruments of like kind and intent.

d. In the event CMG becomes entitled to proceed under preceding § "b" of this ¶ 5, it may elect among, and apply or enforce in any order any one or more of the forms of Additional Security.

9. Further Promises and Covenants Relating to the Security. ROWMEC promises:

a. to defend the priority of all security interests, assignments and pledges granted or intended to be granted to CMG hereunder against the claims and demands of all persons other than CMG, and hold CMG harmless, and indemnify CMG as to any and all expenses, including legal fees and litigation costs that may incurred in enforcing CMG's rights under this agreement and the Predecessor Agreements;

b. pay all costs, expenses, charges and other obligations, including without limitation, reasonable attorney fees, suffered or incurred by CMG to enforce such rights, and protect, preserve, maintain and/or obtain possession of the monies assigned to it hereunder;

c. execute and deliver any additional instruments requested by CMG in order to secure CMG's rights hereunder including, but not limited to notices to third-parties of the within assignment, Uniform Commercial Code ("UCC") filings, and any other instrument, document or notice reasonably required in order to preserve, protect and maintain the security interest and lien intended to be granted to CMG, and CMG's rights, powers, remedies and defenses under this Agreement;

10. Further Promises and Covenants Relating to Payment of the ROI to CMG.

a. Should ROWMEC, at any point at which any portion of the ROI remains unpaid, receive any portion of a Recovery, whether through collection of the Judgment, settlement or otherwise, ROWMEC shall shall immediately be so advise CMG, and promptly deliver all such moneys it has so received to CMG up to the full amount outstanding of the ROI has been paid in full; if received in the form of a check or draft payable to ROWMEC, it shall, unless directed otherwise in writing by CMG, endorse such check or draft to the order of CMG, and promptly deliver same in that form, or as as otherwise instructed, directly to CMG; until all such moneys are delivered to CMG, ROWMEC, or the Attorneys shall hold same in safekeeping as the agents and fiduciaries of CM G.

Certified Document Number: 40678460 - Page 10 of 28

b. ROWMEC shall endorse any check(s) representing the proceeds of the Recovery to the order of CMG, and execute and deliver any other instrument necessary in order to effect the delivery of such monies as are due CMG, and

c. direct and empower the Attorneys to deliver the Recovery to to CMG in accordance with the terms of the within Agreement.

d. In the event that any such moneys are inappropriately delivered, misdirected or ortherwise lost without reaching CMG, ROWMEC assumes all risk of loss, admits negligence and shall be liable to CMG for restitution to CMG of the full amount so lost, payment of which to CMG shall be secured by its recourse to the Additional Security.

11. **Promises of the Attorneys.** In consideration for the willingness of CMG to enter into the within transaction for the benefit of Attorneys client, ROWMEC, Attorneys agree to excute and delivery to CMG by the Funding Date an "Acknowledgment of Attorney" in the form annexed hereto and made part hereof as "Schedule D," and further promises, in addition to the underta king made in said acknowledgment, that:

a. Insofar as the proceeds of a Recovery are received by the Attorney as counsel for ROWMEC in the Litigation, Attorneys shall cause such proceeds to deposited into Attorneys' escrow or trust account, or a special account established for the purpose of holding such funds, and promptly advise CMG of the receipt and deposit of same;

b. In the event of any dispute with respect to the Recovery, for as long as such monies come within Attorneys' possession or control, Attorneys agree (i) not to disburse any such funds in question to himself or ROWMEC or any party other than CMG prior to settlement or resolution of the dispute, except with CMG's written consent, and (ii) to hold all such monies representing the Recovery on deposit in Attorney's trust or escrow account or special account until the resolution of such dispute.

c. With respect to the receipt and holding of such moneys and enforcement of the terms of the within assignment, Attorneys shall be deemed CMG's fiduciary and agent, and to the extent provided for by law, Attorneys shall be liable to CMG for professional mal-practice, and for negligence for any improper disbursement of monies due CMG to Attorney, ROWMEC or a third-partry without CMG's express written consent.

d. Attorneys shall keep and maintain, at no expense to CMG, the complete records and case file relating to the Litigation, including all correspondence, pleadings, decisions, and other matters and all other related documents, and for so long as the Litigation remains pending and any portion of the ROI remains unpaid CMG shall have the right with advance notice at any reasonable time during normal business hours, to review at ROWMEC's option, either at ROWMEC's principal office, or the offices of the Attorneys, or Substituted Attorneys, all documents contained therein except as may relate to, or contain matters of attorney-client privileged.

Certified Document Number: 40678460 - Page 11 of 28

12. **Events of Default**. ROWMEC shall be in default under the within agreement if:

a. It fails to observe and timely perform any covenants, conditions or agreements required to be observed or performed by ROWMEC under this agreement, makes a material misrepresentation hereunder, or breaches any material promise made hereunder, including any promise to hold for CMG's account, and/or to timely remit all amounts which may be due CMG, or

b. Any of the information provided to CMG by ROWMEC is inaccurate, incorrect or incomplete, and ROWMEC fails, upon becoming aware of same, to promptly take reasonable measures to make CMG aware of same and correct or supplement such information.

c. ROWMEC shall be directly liable to CMG for its losses as a result of the aforesaid breaches, notwithstanding any other provisions herein limiting recourse, or providing for recourse to the additional Security or the Recovery, if any such default shall be willful, intentional, and/or the result of fraud, or otherwise as the result of factors which are within ROWMEC's control, and as to which it has failed to take reasonable measures to protect any right or interest of CMG provided under this agreement.

d. If within ten (10) days after receipt by ROWMEC of written notice of an event of default ROWMEC fails to cure same, CMG's rights to recourse to the Additional Security shall therupon be accelerated, and may be exercised to the same extent, and in the same manner as they might be exercised in the event recourse to same would become available pursuant to § "b" of preceding ¶ 8.

e. In the event ROWMEC defaults under this Agreement, as described herein, CMG shall be entitled to equitable relief as may be appropriate, including an order for specific performance in the venue as set forth in this Agreement. ROWMEC further waives all questions of personal jurisdiction or venue for purposes of enforcing this Agreement. In the event that ROWMEC intentionally and/or negligently defaults in the performance of any obligation required to protect and preserve the Litigation, ROWMEC shall be liable to CMG for the full ROI, plus attorney fees, interest and costs.

f. In the event that a court of competent jurisdiction determines that ROWMEC fraudulently induced CMG to enter into this Agreement, ROWMEC shall be liable to CMG for the amount of the full ROI, plus attorney fees, interest and costs.

13. **Right of First Refusal**. ROWMEC grants CMG the exclusive right of "first refusal" for any additional funding that ROWMEC may wish to obtain regarding the Litigation. ROWMEC shall not grant additional lien upon, or otherwise assign, pledge or transfer any portion of the proceeds of the Litigation, although subordinated to CMG's existing lien, without the the express written consent of CMG.

14. **Confidentiality**. CMG agrees that all information and materials received are confidential and will not be shared with any party other than its affiliates, investors, the ROWMEC or its attorneys.

Certified Document Number: 40678460 - Page 12 of 28

15. Right to Assign.

a. ROWMEC shall have no right to assign either this agreement or any of the benefits, rights, interests or obligations hereunder, and ANY PURPORTED ASSIGNMENT BY ROWMEC SHALL BE ABSOLUTELY NULL AND VOID.

b. ROWMEC further agrees that CMG shall have the right to assign this agreement or any of its rights, interests or obligations hereunder without prior notice and without limitation, and ROWMEC and the Attorneys promises to acknowledge and honor such assignment promptly and in accordance with all of its terms.

16. Third-Party Beneficiary. This agreement does not create, and shall not be construed as creating any rights enforceable by any person not a party to this Agreement, except insofar as specifically provided for herein.

17. Power of Attorney. ROWMEC aggrees to execute and deliver to a "Power of Attorney" in favor CMG, the form of which shall that set forth in, and made part hereof as "Schedule D," annexed hereto, authorizing and empowering CMG, in the name of, and on behalf of ROWMEC,

a. To receive and endorse any and all settlement checks payable to ROWMEC representing a Recovery in order to secure payment of the ROI, as evidenced by the within agreement and assignment, and with full power of substitution and revocation, to ask for, collect, demand and receive; and

b. to prosecute and sue for, by proceedings or otherwise, in a court of law or equity; to give acquittance for said money or monies due or to become due, or any part thereof, and to withdraw any claims, suits or proceedings pertaining to, or out of the Security Agreement and Assignment, or assignments or other instruments or agreements provided for thereunder.

c. to authorize CMG, as necessary, in the event of ROWMEC's unavailability or failure upon request to execute same within one (1) business day of receipt, any documents, instruments, financing statements, UCC or other forms, or instruments, including any amendment thereof, or consents to orders, as counsel for CMG may reasonably require for the purpose of effectuating the security interest, liens and/or assignments contemplated hereunder, and the continuation or perfection of any security interest identified or provided for herein, to execute and deliver any instrument related to effectuating any assignment contemplated by the preceding paragraphs "a" and "b," or otherwise contemplated in the within agreement. , and ROWMEC to execute such instruments on his behalf.

18. Governing Law, Personal Jurisdiction, Venue and Indemnification.

a. ROWMEC acknowledges and agrees that at CMG's election, any and all disputes that arise concerning the terms, conditions, interpretation or enforcement of this Agreement shall be determined through arbitration pursuant to the Rules and methods outlined by the American Arbitration Association in New Jersey, or in a Court of competent jurisdiction, also at the election of CMG.

Certified Document Number: 40678460 - Page 13 of 28

b. ROWMEC agrees that the laws of the State of New Jersey shall control the interpretation of this Agreement. Except as to matters affecting the title to the Pledged Real Property, and matters controlled by that version of Article 9 of the Uniform Commercial Code ("UCC") in force in the State of Texas or in any other jurisdiction in which a secutity interest contempated herin is recorded, this Agreement shall be governed by and interpreted under the laws of the State of New Jersey applicable to contracts made and to be performed therein, without giving effect to the principles of conflict of laws.

b. ROWMEC waives any objection to personal jurisdiction or venue, and agrees to submit to the personal jurisdiction of any arbitration panel, or state or federal courts located within a 60 mile radius of Hackensack, Bergen County, New Jersey.

c. Except with the written consent of CMG, the State of New Jersey shall be the exclusive forum for all proceedings in a court relating to this within agreement, and/or any other agreements or instruments executed in connection therewith, except that in the event CMG elects Arbitration.

d. The ROWMEC hereby appoints Attorneys to accept initial service of process on ROWMEC's behalf, which process may be made as to both ROWMEC and Attorney in accordance with the New Jersey Rules of Court.

e. ROWMEC acknowledges and agrees to indemnify CMG against any and all losses, liability, setback and expenses, including but not limited to, reasonable Attorney fees, expenses and costs resulting from or arising out of the enforcement of this agreement, the Security Instruments and all related agreements and instruments.

19. Notices. Any notice required by this Agreement or given in connection with it shall be in writing and shall be given to appropriate party by personal delivery or by certified mail; postage prepaid or recognized overnight delivery services, delivered to the address appearing at the head of this agreement, unless such party has notifed all of the other parties hereto in writing, at least ten (10) days prior to the receipt of such notice of any change of address.

20. Headings. Headings used in this agreement are provided for convenience only and shall not be used to construe meaning or intent.

21. Partial Invalidity. Should any provisions or paragraphs in this Agreement be deemed unenforceable or invalid, such unenforceability or invalidity shall not affect the validity or enforceablity of the balance of the terms and condition of this Agreement.

22. Merger/Entire Agreement. Except as set forth with respect to the portions of the Predecessor Agreements which are intended to survive, this agreement contains the entire understanding between the parties, supersedes all other previous agreements, whether written or oral, with regard to the subject matter hereof; all prior and contemporaneous discussions between and among the parties are deemed to be merged herein and this agreement may be modified only by a written instrument duly executed by the party to be charged.

Certified Document Number: 40678460 - Page 14 of 28

IN WITNESS WHEREOF, the parties have affixed their signatures on the date first hereinabove written.

Witness or Attest:

Pamela Capell
Sec.

RIGHT OF WAY MAINTENANCE EQUIPMENT COMPANY, INC.

By: John P. O'Hagan
John P. O'Hagan, Sr. President

THE BANDAS LAW FIRM

By: ________________
Name: Christopher A. Bandas
Title Attorney / CEO

CAMBRIDGE MANAGEMENT GROUP, LLC

By: ________________
James N. Giordano, President

Certified Document Number: 40678460 - Page 15 of 28

**SCHEDULE A**

Certified Document Number: 40678460 - Page 16 of 28

FILE COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RIGHT OF WAY MAINTENANCE COMPANY D/B/A ROWMEC<br>Plaintiff, | § | |
| v. | § | C.A. H-05-4081 |
| GYRO-TRAC, INC., AND GYRO-TRAC (USA), INC.<br>Defendants. | § | |

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTION**

Plaintiff complains of Defendants as follows:

I.

**PARTIES**

1. Plaintiff RIGHT OF WAY MAINTENANCE COMPANY D/B/A ROWMEC ("ROWMEC") is a Texas Corporation having its principal place of business in Montgomery County, Texas.

2. Defendant Gyro-Trac, Inc. ("GT Canada") is a foreign corporation organized and existing under the laws of Canada. This Defendant may be served with process by serving the acting Secretary of State, Roger Williams, as its agent for service at P.O. Box 12887, Austin, Texas 78711-2887.

3. Defendant Gyro-Trac (USA), Inc. ("GT USA") is a foreign corporation organized and existing under the laws of State of South Carolina. This Defendant may be served with process by serving the acting Secretary of State, Roger Williams, as its agent for service at P.O. Box 12887, Austin, Texas 78711-2887.

Certified Document Number: 40678460 - Page 17 of 28

II.

**JURISDICTION AND VENUE**

4. This Court has personal jurisdiction over the Defendants because of their activities in the State of Texas and within the Southern District of Texas.

5. This court has jurisdiction over the parties and subject matter of this suit pursuant to 28 U.S.C. §1332(a). Plaintiff is a Texas corporation having its principal place of business in Texas. The corporate defendants are foreign corporations having their principal places of business outside Texas. There is complete diversity between the parties, and the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000, as hereinafter more fully appears.

6. Venue is proper in the United States District Court for the Southern District of Texas, Houston Division pursuant to 28 USC §1391(a)(2), in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and Division.

III.

**FACTS**

7. On or about September 12, 2003, Plaintiff executed a contract with Defendants that settled a prior lawsuit between these parties arising from, among other things, patent infringement by the Defendants (the "Settlement Agreement"). See Attached Exhibit "A," Agreement.

8. The Settlement Agreement established Plaintiff as an exclusive dealer of Gyro-Trac products in Texas, Louisiana, Oklahoma, Arkansas, and New Mexico.

Certified Document Number: 40678460 - Page 18 of 28

9. The Settlement Agreement also established the terms on which Defendants would sell and/or consign certain equipment to Plaintiff, which created a "most favorite dealer" pricing clause that sets Plaintiff's costs at Defendants' "lowest wholesale price, less and additional ten percent (10%)."

10. The Settlement Agreement also granted a license to the Defendants in certain intellectual property owned by Plaintiff related to the design of certain cutter heads and cutter teeth used by certain types of tractors and heavy machinery in the land clearing industry.

11. In exchange for this license, the Settlement Agreement required Defendants to make certain up-front payments and certain ongoing commission, or royalty, payments to Plaintiff, the amounts of which were tied to certain sales requirements for Plaintiff of Defendants' products.

12. Since the execution of the Settlement Agreement, Defendants have failed to comply with its terms and have materially breached that agreement in at least the following ways: (1) Defendants have underpaid royalties to Plaintiff; (2) Defendants have violated Plaintiff's exclusive dealer rights in the specified territories; (3) Defendants have failed to supply tractors and equipment as required by the terms of the agreement; (4) Defendants have failed to provide required sales data; (5) Defendants have failed to honor certain manufacturer's warranties on products sold by Plaintiff; (6) Defendants have failed to sell products to Plaintiff on the standard terms and conditions established by the agreement; and (7) Defendants have failed to honor the "most favorite dealer" pricing clause.

13. In addition to the foregoing, Defendants have taken steps to divert sales by Plaintiff in the exclusive territories to Defendants.

Certified Document Number: 40678460 - Page 19 of 28

14. Defendants have interfered with Plaintiff's business relationships with several existing and prospective customers by taking steps to divert certain sales to Defendants.

15. To this end, Defendants have also made numerous untrue and disparaging remarks to Plaintiff's existing and prospective customers, the effect of which has been to harm Plaintiff through lost sales and lost prospective business relationships.

16. Plaintiff has fully complied with all terms of the Settlement/Dealership Agreement.

17. After receiving notice of this lawsuit in the form of a request for waiver of service on December 6, 2005, Defendants have made no attempt to respond to the lawsuit or Plaintiff's request for waiver of service. See Attached Exhibit "B," Request for Waiver of Service. Instead of waiving service and filing an answer, Defendants retaliated by faxing to Plaintiff a letter wrongfully terminating its dealership franchise. See attached Exhibit "C." Additionally, Defendants now refuse to sell Plaintiff's parts with which to fix its customers tractors that have broken down.

18. Upon information and belief, Defendants have also increased their efforts to divert sales from Plaintiff's customers to Defendants. Likewise, Defendants numerous and untrue disparaging remarks to Plaintiff's existing and prospective customers have also increased. Since the instigation of this lawsuit, Plaintiff has also been informed that Defendants have now sold approximately 20 cutter heads and at least 2 tractors to customers in Plaintiff's exclusive territories and is actively seeking to establish a dealership with Texas Timberjack, a dealership selling ASV Tractors and one of Plaintiff's largest customers.

Certified Document Number: 40678460 - Page 20 of 28

IV.

CAUSES OF ACTION

**A. First Count: Breach of Contract.**

19. Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth below.

20. By the conduct described herein, Defendants breached the terms of the Settlement Agreement.

21. Defendants' actions in this regard have resulted and are currently resulting in substantial damages to Plaintiff in an amount yet to be determined; however, these damages far exceed this Court's minimum jurisdictional limits of $75,000 (exclusive of costs and interest).

**B. Second Count: Trade Disparagement in Violation of the Lanham Act.**

22. Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth below.

23. By making disparaging and misleading comments to Plaintiff's existing and prospective customers about Plaintiff that misrepresent the nature, characteristics and qualities of Plaintiff and its goods, Defendants have caused and will likely continue to damage Plaintiff in violation of Section 43(a) of the Lanham Act and 15 U.S.C. § 1125(a)(B).

24. Defendants' actions in this regard have resulted and are currently resulting in substantial damages to Plaintiff in an amount yet to be determined.

**C. Count 3: State Law Business Disparagement.**

25. Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth below.

Certified Document Number: 40678460 - Page 21 of 28

26. Defendant have published false and disparaging information about Plaintiff, with malice, without privilege, and which resulted in special damages to the Plaintiff, including but not limited to lost sales and lost prospective business relationships.

**E. Count 4: State Law Tortious Interference.**

27. Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth below.

28. By engaging in the conduct described herein, Defendants have interfered with Plaintiff's existing contracts and prospective economic relationships, which has directly and proximately caused harm to Plaintiff.

**F. Count 5: State Law Violations of Texas Business & Commerce Code Section 1, Title 2, Chapter 19.**

29. Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth below.

30. By engaging in the conduct described herein, Defendants have (1) without cause terminated their dealership agreement with Plaintiff, (2) without cause substantially changed the competitive circumstances of the dealership agreement, and (3) wrongfully discriminated against Plaintiff as to delivery, pricing and terms of payment, all of which has directly and proximately caused harm to Plaintiff.

**V.**

**EXEMPLARY DAMAGES**

31. Because Defendants have acted maliciously, willfully, and/or in reckless disregard of Plaintiff's rights, exemplary damages should be imposed on Defendants in amount to be determined.

Certified Document Number: 40678460 - Page 22 of 28

VI.

**APPLICATION FOR INJUNCTIVE RELIEF**

32. Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth below.

33. ROWMEC has no adequate remedy at law for the damage to its goodwill, prospective goodwill, reputation and the destruction of its business due to the wrongful termination of its dealership agreement. Without equitable relief in the form of an injunction, Defendants will continue to sell products in ROWMEC's exclusive territory, will continue to interfere with ROWMEC's existing and prospective business relationships and will further damage ROWMEC's reputation and goodwill. This will cause further harm and injury to ROWMEC and it will lose the competitive advantage, to which it is legally and contractually entitled, and the goodwill it has created. The injury to ROWMEC is devastating, whereas the harm to Defendants is *non-existent*, as they will simply be prohibited from violating the terms of their settlement/dealership agreement. ROWMEC simply seeks to maintain the status quo, because Defendants do not have the right to conduct said activities in ROWMEC's exclusive territories. ROWMEC has a strong likelihood of success in this lawsuit.

34. Additionally, it will be difficult to ascertain the amount of compensation which would afford ROWMEC adequate relief for Defendants' continuing acts. Therefore, ROWMEC's remedy at law is inadequate to compensate it for the injuries it will suffer if Defendants are not stopped with the conduct described above.

35. For the reasons described above, ROWMEC seeks the issuance of an injunction prohibiting Defendants from (1) terminating, violating or disregarding the September 12, 2003 settlement/dealership agreement between the parties, (2) continuing to sell to customers within

Certified Document Number: 40678460 - Page 23 of 28

ROWMEC's exclusive territory, (3) continuing to violate ROWMEC's rights under the terms of its settlement/dealership agreement with Defendants, (4) continuing to refuse to sell parts to ROWMEC, so as to prevent ROWMEC from servicing its customers, (5) continuing to contact ROWMEC's customers, and (6) continuing to make disparaging remarks to ROWMEC's customers.

36. ROWMEC is willing to post a bond in the amount the court deems appropriate.

37. ROWMEC seeks an expedited hearing before the Court as soon as practicable, and the issuance by the Court following said hearing of a temporary restraining order as noted above. Further, ROWMEC seeks a hearing on preliminary injunction within 10 days of the issuance of a temporary restraining order, and the issuance by the Court following said hearing of a preliminary injuction.

38. Plaintiff further asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after trial, to issue a permanent injunction against Defendants.

VII.

**ATTORNEYS FEES**

39. Plaintiff has retained the undersigned law firm to represent Plaintiff in this action. Plaintiff further prays for an award of reasonable and necessary attorneys' fees to Plaintiff, which would be equitable and just and authorized by Section 37.009 of the Civil Practice and Remedies Code.

Certified Document Number: 40678460 - Page 24 of 28

VIII.

CONDITIONS PRECEDENT

40. All conditions precedent to ROWMEC's right to recover as requested herein have occurred or been satisfied.

IX.

REQUEST FOR JURY TRIAL

41. Plaintiff requests a trial by jury.

X.

PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff asks that Defendants be cited to appear and answer and, on final trial, that Plaintiff have judgment against Defendants for the following:

a. Actual/economic damages;

b. Exemplary damages as allowed by law;

c. Attorney fees;

d. Pre-judgment and post-judgment interest as allowed by law;

e. Costs of suit;

f. Permanent Injunctive relief; and

g. All other relied to which Plaintiff may show itself justly entitled.

Certified Document Number: 40678460 - Page 25 of 28

Respectfully submitted,
BANDAS LAW FIRM, P.C.

By: ______________________
Christopher A. Bandas
State Bar No. 00787637
David L. Jones
State Bar No. 24002370
500 N. Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78471
(361) 698-5200 Telephone
(361) 698-5222 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

**CERTICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served upon Defendants, as indicated below, on this the 21st day of February 2006.

**Via Certified Mail-RRR**
**& Facsimile: (713) 225-3719**
Mr. James Patrick Keenan
Buck, Keenan, Gage, Little & Lindley, L.L.P.
700 Louisiana Street, Ste. 5100
Houston, Texas 77002-2732

**Via Certified Mail-RRR**
**& Facsimile: (843-879-0218**
Ms. Odette Monef, General Manager
Gyro-Trac (USA) Inc.
10 Flying Cloud Drive
Summerville, SC 29483

______________________
David L. Jones

Certified Document Number: 40678460 - Page 26 of 28

**SCHEDULE B**

**NAME AND ADDRESS OF LAW FIRM WITH LIEN ON CASE**

THE BANDAS LAW FIRM
500 N. Shoreline Blvd Suite 1020
Corpus Christi, TX 78471

**OTHER PRIOR SUPERIOR LIENS AS OF THE DATE OF THIS AGREEMENT**

NONE

Dated:

RIGHT OF WAY MAINTENANCE
EQUIPMENT COMPANY, INC.

By: ______________________
John P. O'Hagan, Sr., Vice President

Certified Document Number: 40678460 - Page 27 of 28

**SCHEDULE C**

Certified Document Number: 40678460 - Page 28 of 28

CHICAGO TITLE INSURANCE COMPANY
909 Fannin, Suite 300, Houston, Texas 77010 (713) 659-1411
FAX (713) 655-7418

# OWNERSHIP AND LIEN SEARCH CERTIFICATE

STATE OF TEXAS
COUNTY OF MONTGOMERY 000027784

CHICAGO TITLE INSURANCE COMPANY has examined the real property records of Chicago Title Insurance Company's abstract plant as to Montgomery County, Texas, and find the information contained herein affecting title to the property described as follows:

TRACT I

Being 1.947 acres of land, situated in the William H. Harrison Survey, Abstract Number 653 in Montgomery County, Texas and being that same tract called 1.930 acres as described in Deed to ALLTEX Interior Supply, Inc., recorded under Clerk minutes as File Number 9048570 of the Real Property Records of Montgomery County, Texas; said 1.947 acres being more particularly described by metes and bounds as follows with all bearings referenced to the North line of Old Highway 105 East:

BEGINNING at an "X" marked in concrete, set in the North line of Old Highway 105 East for the Southwest corner of the herein described tract and the Southeast corner of a 2.322 acre tract described in deed recorded under Clerks File Number 9625592 of the Real Property Records of Montgomery County, Texas; said "X" being referenced by a 5/8 inch iron rod, found for controlling monument bearing North 70 degrees 44 minutes 23 seconds West, 156.30 feet;

THENCE North 12 degrees 37 minutes 40 seconds East, leaving the North line of Old Highway 105 East, a distance of 461.84 feet following along the Boundary Line Agreement described under Clerks File Number 2003-046748 of the Real Property Records of Montgomery County, Texas, to a 5/8 inch iron rod, set with survey cap for the Northwest corner of the herein described tract in the Southeast line of Lot 87 of Crystal Creek Forest Subdivision recorded in Cabinet A, Sheet 20 of the Map Records of Montgomery County, Texas and being the Northeast corner of the aforementioned 2.322 acre tract;

THENCE North 60 degrees 07 minutes 04 seconds East, a distance of 214.70 feet (Deed Call: North 59 degrees 08 minutes 40 seconds East, 211.94 feet) along the Northerly line of the called 1.930 acre tract and the Southerly line of Crystal Creek Forest subdivision, to a 5/8 inch iron rod, found for the Northeast corner of the herein described tract and the Northwest corner of 6.831 acre tract described in deed to Virgil West under Clerks File Number 8432412 of the Real Property Records of Montgomery County, Texas;

THENCE South 12 degrees 56 minutes 23 seconds West, a distance of 622.70 feet (Deed Call: South 12 degrees 11 minutes 00 seconds West, 623.32 feet) along the West line of said 6.821 Virgil West tract and the East line of the called 1.930 acre tract, to a 1/2 inch iron rod, found in the North line of Old Highway 105 East for the Southeast corner of the herein described tract and the Southwest corner of said 6.821 Virgil West tract minutes;

Exhibit C

Certified Document Number: 40678461 - Page 1 of 36

THENCE North 71 degrees 33 minutes 22 seconds East, following along the North line of Old Highway 105 East, a distance of 155.68 feet (Deed call:North 71 degrees 37 minutes 00 seconds West 155.86 feet) back to the Point of Beginning and containing 1.947 acres of land.

*NOTE: This Company does not represent that the above acreage or square footage calculations are correct.*

TRACT II

Being 2.322 acres of land, situated in the William H. Harrison Survey, Abstract Number 653 in Montgomery County, Texas and being apart of that certain 1.378 acre tract described under Clerk's File Number 9751411 of the Real Property REcords of Montgomery County, Texas and that certain 0.946 acre tract described under Clerk's File Number 9628566 of the Real Property Records of Montgomery County, Texas; said 2.322 acres being more particularly described by metes and bounds as follows with all bearings referenced to the North Line of Old Highway 105 East:

BEGINNING at an "X" marked in concrete, set in the North Line of Old Highway 105 East for the Southeast corner of the herein described tract and the Southeast corner of said 1.378 acre tract and the Southwest corner of a called 1.930 acre tract described in deed recorded under Clerk's File Number 9048570 of the Real Property Records of Montgomery County, Texas;

THENCE, with the following courses and distances along the North line of Old Highway 105 East,

North 70° 44' 23" West, 156.30 foot, to a 5/8 inch iron rod found for an angle point and being the Southwest corner of said 1.378 acre tract and said 0.946 acre tract;

North 78° 36' 19" West, 152.24 feet, to a bent 5/8 inch iron rod found for an angle point;

North 84° 38' 31" West, 126.12 feet, to a 1/2 inch iron ron rod found at a fence corner for the Southwest corner of the herein described tract;

THENCE, North 59° 40' 07" East, leaving the North line of Old Highway 105 East, a distance of 189.54 feet, to a 1/2 inch iron rod found for an interior corner of the herein described tract an interior corner of the called 0.946 acre tract;

THENCE, North 28° 36' 20" West, a distance of 51.42 feet, to a point referenced by a fence post corner that bears South 26° 16' 25" East, a distance of 1.76 feet and eing the Northwest corner of the herein described tract and being in the South line of Crystal Creek Forest as recorded under Cabinet A, Sheet 20 of the Map Records of Montgomery County, Texas;

THENCE along the South line of Crystal Creek Forest and the North line of the

Certified Document Number: 40678461 - Page 2 of 36

called 0.946 acre tract, North 61° 39' 40" East, a distance of 220.53 feet, to a point referenced by a 3 inch fence post corner that bears South 29° 54' 37" East a distance of 0.62 feet and being the Northeast corner of said 0.946 acre tract and the Northwest corner of said 1.378 acre tract;

THENCE continuing along the South line of Crystal Creek Forest and the North line of said 1.378 acre tract, North 59° 34' 45" East, a distance of 220.62 feet, to a 5/8 inch iron rod with survey cap mark, "Glezman RPLS 4627", set for the Northeast corner of the herein described tract, the Northeast corner of said 1.378 acre tract and the Northwest corner of said 1.930 acre tract;

THENCE South 12° 37' 40" West, along the West line of said 1.930 acres and the East line of said 1.378 acre tract, a distance of 461.84 feet, back to the *POINT OF BEGINNING* and containing 2.322 acres of land.

NOTE: *This Company does not represent that the above acreage or square footage calculations are correct.*

**Record title appears to be vested in:**

Right of Way Maintenance Equipment Company, a Texas corporation

BY VIRTUE OF: Special Warranty Deed with Vendor's Lien filed April 25, 2005 and recorded under Montgomery County Clerk's File No(s). 2005041843 from Alltex Interior Supply, Inc., a Texas corporation to Right of Way Maintenance Equipment Company, a Texas corporation. (as to Tract I)

Warranty Deed filed July 23, 2007 and recorded under Montgomery County Clerk's File No(s). 2007085625 from O'Hagan's Tree Eater Service, Inc. to Right of Way Maintenance Equipment Company, A Texas corporation. (as to Tract II)

Subject to the following unreleased liens:

Deed of Trust filed April 25, 2005 and recorded under Montgomery County Clerk's File No(s). 2005041844 between Right of Way Maintenance Equipment Company, a Texas corporation and Tom Giesenschlag, Trustee for Alltex Interior Supply, Inc., a Texas corporation.

Searches for abstracts of judgment, state and federal tax liens, divorces, probates, and bankruptcies have been made as to the following names:

Right of Way Maintenance Equipment Company, a Texas corporation - None Found

We have made no search as to Ad Valorem taxes, suits or special assessments.

This certificate is for the use and benefit of CAMBRIDGE MANAGEMENT GROUP, LLC. and is issued in consideration of $200.00 paid to CHICAGO TITLE INSURANCE COMPANY, by CAMBRIDGE MANAGEMENT GROUP, LLC. and to whom said sum shall be returned as agreed liquidated damages in the event of loss by reason of errors or omissions contained herein, and by accepting this certificate CAMBRIDGE MANAGEMENT GROUP,

Certified Document Number: 40678461 - Page 3 of 36

Page

LLC. agrees that said sum, and no additional amount, shall constitute the full amount of damages against CHICAGO TITLE INSURANCE COMPANY. CHICAGO TITLE INSURANCE COMPANY assumes no liability for verbal statements.

THIS CERTIFICATE SHALL NOT CONSTITUTE A COMMITMENT TO ISSUE TITLE INSURANCE.

THIS CERTIFICATE IS NOT TRANSFERABLE OR ASSIGNABLE.

Certified through the 26th day of September, 2007.

Dianna M. Zenon 27784

Certified Document Number: 40678461 - Page 4 of 36

MONTGOMERY COUNTY TITLE CO.
3305 West Davis, Suite 100
Conroe, Texas 77304
(936) 441-4889

2005-041843 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

**SPECIAL WARRANTY DEED WITH VENDOR'S LIEN** 0503 0463

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**DATE:** April 22, 2005

**GRANTOR:** ALLTEX INTERIOR SUPPLY, INC., a Texas corporation

**GRANTOR'S MAILING ADDRESS:**

P.O. Box 5533
Bryan, Texas 77805

**GRANTEE:** RIGHT OF WAY MAINTENANCE EQUIPMENT COMPANY, a Texas corporation

**GRANTEE'S MAILING ADDRESS:**

11443 Old Highway 105 East
Conroe, Texas 77303

**CONSIDERATION:** TEN AND NO/100 DOLLARS ($10.00) and a note of even date that is in the principal amount of TWO HUNDRED SIXTY THOUSAND AND NO/100 DOLLARS ($260,000.00) and is executed by Grantee, payable to the order of GRANTOR. The note is secured by a vendor's lien retained in favor of GRANTOR in this deed and by a deed of trust of even date from Grantee to TOM GIESENSCHLAG, Trustee.

**PROPERTY (INCLUDING ANY IMPROVEMENTS):**

Being 1.947 acres of land, situated in the William H. Harrison Survey, Abstract Number 653 in Montgomery County, Texas and being that same tract called 1.930 acres as described in Deed to ALLTEX Interior Supply, Inc., recorded under Clerk minutes as File Number 9048570 of the Real Property Records of Montgomery County, Texas; said 1.947 acres being more particularly described by metes and bounds as follows with all bearings referenced to the North line of Old Highway 105 East:

BEGINNING at an "X" marked in concrete, set in the North line of Old Highway 105 East for the Southwest corner of the herein described tract and the Southeast corner of a 2.322 acre tract described in deed recorded under Clerk's File Number 9625582 of the Real Property Records of Montgomery

Certified Document Number: 40678461 - Page 5 of 36

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

County, Texas; said "X" being referenced by a 5/8 inch iron rod, found for controlling monument bearing North 70 degrees 44 minutes 23 seconds West, 156.30 feet;

East

THENCE North 12 degrees 37 minutes 40 seconds West, leaving the North line of Old Highway 105 East, a distance of 461.84 feet following along the Boundary Line Agreement described under Clerk's File Number 2003-046748 of the Real Property Records of Montgomery County, Texas, to a 5/8 inch iron rod, set with survey cap for the Northwest corner of the herein described tract in the Southeast line of Lot 87 of Crystal Creek Forest Subdivision recorded in Cabinet A, Sheet 20 of the Map Records of Montgomery County, Texas and being the Northeast corner of the aforementioned 2.322 acre tract;

THENCE North 60 degrees 07 minutes 04 seconds East, a distance of 214.70 feet (Deed Call: North 59 degrees 08 minutes 40 seconds East, 211.94 feet) along the Northerly line of the called 1.930 acre tract and the Southerly line of Crystal Creek Forest subdivision, to a 5/8 inch iron rod, found for the Northeast corner of the herein described tract and the Northwest corner of 6.831 acre tract described in deed to Virgil West under Clerk's File Number 8432412 of the Real Property Records of Montgomery County, Texas;

THENCE South 12 degrees 56 minutes 23 seconds West, a distance of 622.70 feet (Deed Call: South 12 degrees 11 minutes 00 seconds West, 623.32 feet) along the West line of said 6.821 Virgil West tract and the East line of the called 1.930 acre tract, to a ½ inch iron rod, found in the North line of Old Highway 105 East for the Southeast corner of the herein described tract and the Southwest corner of said 6.821 Virgil West tract minutes;

THENCE North 71 degrees 33 minutes 22 seconds East, following along the North line of Old Highway 105 East, a distance of 155.68 feet (Deed call: North 71 degrees 37 minutes 00 seconds West 155.86 feet) back to the Point of Beginning and containing 1.947 acres of land.

**RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY BUT ONLY TO THE EXTENT THE FOLLOWING ARE STILL IN EFFECT ACCORDING TO THEIR TERMS:**

(1) An Easement 8 feet wide along the Southerly and Easterly lot line(s) as granted to Gulf States Utilities Company, by instrument recorded in Volume 1014, Page 3 of the Deed Records of Montgomery County, Texas.

(2) Subject to terms and conditions of Boundary Agreement and Special Warranty Deed dated April 21, 2003 recorded under Clerk's File No.

Certified Document Number: 40678461 - Page 6 of 36

035/064

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

2003-046743 of the Real Property Records of Montgomery County, Texas.

(3)   The reservation of all the oil, gas and other minerals, as the same are set forth in instrument recorded in Volume 199, Page 356, of the Deed Records of Montgomery County, Texas.

(4)   The conveyance of all the oil, gas, and other minerals, as the same are set forth in instrument recorded in Volume 321, Page 1, Volume 337, page 177, Volume 337, page 188 Deed Records and under Clerk's File No. 8544019 of the Real Property Records of Montgomery County, Texas.

(5)   The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated August 8, 1953 recorded in Volume 374, page 550 of the Deed Records of Montgomery County, Texas, for a primary term of 5 years.

(6)   The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated February 25, 1971 recorded in Volume 750, page 508 of the Deed Records of Montgomery County, Texas, for a primary term of 5 years.

(7)   The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated October 29, 1971 recorded in Volume 758, Page 838 of the Deed Records of Montgomery County, Texas, for a primary term of 5 years.

(8)   The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated November 16, 1971 recorded in Volume 765, Page 600 of the Deed Records of Montgomery County, Texas, for a primary term of 5 years.

(9)   The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated February 25, 1972 recorded in Volume 795, Page 376 of the Deed Records of Montgomery County, Texas, for a primary term of 5 years.

(10)  The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated December 20, 1972 recorded in Volume 807, Page 740 of the Deed Records of Montgomery County, Texas, for a primary term of 5 years.

(11)  The reservation of 1/2 the oil, gas and other minerals, as set forth in instruments recorded in Volume 449, Page 277, of the Deed Records of Montgomery County, Texas.

3

Certified Document Number: 40678461 - Page 7 of 36

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

(12) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated April 6, 1982 recorded in under Clerk's File No. 8215605 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years.

(13) The terms, conditions and stipulations of that certain oil, Gas and Mineral Lease dated April 11, 1982 recorded under Clerk's File No. 8216392 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years.

(14) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated April 9, 1982 recorded under Clerk's File No. 8217532 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years.

(15) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated April 13, 1982 recorded under Clerk's File No. 8217533 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years.

(16) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated April 13, 1982 recorded under Clerk's File No. 8217879 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years.

(17) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated April 7, 1982 recorded under Clerk's File No. 8221010 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years.

(18) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated April 13, 1982 recorded under Clerk's File No. 8221012 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years.

(19) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated April 13, 1982 recorded under Clerk's File No. 8221013 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years. Said Lease is subject to a Conveyance recorded under Clerk's File No.8325618 Real Property Records of Montgomery County, Texas.

(20) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated April 7, 1982 recorded under Clerk's File No. 8223486 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years.

Certified Document Number: 40678461 - Page 8 of 36

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

(21) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated May 27, 1982 recorded under Clerk's File No. 8227364 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years.

(22) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated April 13, 1982 recorded under Clerk's File No. 8228972 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years.

(23) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated April 13, 1982 recorded under Clerk's File No. 8228973 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years.

(24) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated April 9, 1982 recorded under Clerk's File No. 8230126 of the Real Property Records of Montgomery County, Texas.

(25) The terms, conditions and stipulations of that certain Oil, Gas and Mineral Lease dated July 1, 1982 recorded under Clerk's File No. 8231179 of the Real Property Records of Montgomery County, Texas, for a primary term of 3 years.

(26) All oil, gas and other minerals in and under the herein described property, together with any rights of ingress and egress, mining or drilling privileges heretofore reserved or conveyed by predecessors in title, still in effect and recorded in the Real Property Records of Montgomery County, Texas, and not referenced above as an exception to conveyance and warranty.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor hereby binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to warranty, when the claim is by, through or under Grantor but not otherwise.

The vendor's lien against and superior title to the property are retained until each note described is fully paid according to its terms, at which time this deed shall become absolute.

The vendor's lien and superior title to the property are retained by Grantor

Certified Document Number: 40678461 - Page 9 of 36

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

When the context requires, singular nouns and pronouns include the plural.

ALLTEX INTERIOR SUPPLY, INC., a Texas corporation

BY: ______________________
JAMES GARCIA, PRESIDENT

THE STATE OF TEXAS §
COUNTY OF MONTGOMERY §

This instrument was acknowledged before me on the 22 day of April, 2005, by JAMES GARCIA, PRESIDENT of ALLTEX INTERIOR SUPPLY, INC., a Texas corporation, on behalf of said corporation.

PATRICIA J. ROACH
Notary Public
STATE OF TEXAS
My Comm. Exp. 1-01-2008

______________________
Notary Public, State of Texas

PREPARED BY:

TOM GIESENSCHLAG
418 Tarrow
College Station, TX 77840
(TG/cab/MCTC7191)

MEMORANDUM
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

AFTER RECORDING, RETURN TO:

DON STOCKING, ATTORNEY
2040 North Loop 336 West, Suite 120
Conroe, Texas 77304

FILED FOR RECORD
2005 APR 25 PM 12: 16

COUNTY CLERK
MONTGOMERY COUNTY TEXAS

STATE OF TEXAS
COUNTY OF MONTGOMERY
I hereby certify this instrument was filed in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED in the Official Public Records of Real Property of Montgomery County, Texas.

APR 25 2005

County Clerk
Montgomery County, Texas

Certified Document Number: 40678461 - Page 10 of 36

SCHEDULE D

LIMITED IRREVOCABLE POWER OF ATTORNEY

RIGHT OF WAY MAINTENANCE EQUIPMENT COMPANY, INC. ("Grantor") does hereby constitute and appoint CAMBRIDGE MANAGEMENT GROUP, LLC ("CMG"), whose principal place of business is located at 125 State Street, Hackensack, New Jersey 07601, as its true and lawful attorney, and in its name, place and stead, for the following purposes:

a. To receive and endorse any and all checks or drafts payable to Grantor representing a settlement or other form of a Recovery on behalf of Grantor with respect to certain pending litigation entitled Right of Way Maintenance Company, Inc. v. Gyro-Trac, Inc. and Gyro-Trac USA, Inc., et al. Index No. 06-4081 ((U.S.D.C. S.D.Texas) ("the Litigation"), which is the same matters in which Grantor have assigned a portion of its right, title and interest to CMG to secure payment of its obligations to CMG pursuant to a certain "AGREEMENT ASSIGNING INTEREST IN SETTLEMENT, SECURITY AGREEMENT with LIMITED IRREVOCABLE POWER OF ATTORNEY" ("the Assignment and Security Agreement") and with full power of substitution and revocation, to ask for, collect, demand and receive; and

b. to prosecute and sue for, by proceedings or otherwise, in a court of law or equity; to give acquittance for said money or monies due or to become due, or any part thereof, and to withdraw any claims, suits or proceedings pertaining to, or out of the Assignment and Security Agreement, or assignments or other instruments or agreements provided for thereunder.

In the event of Grantor's unavailability or failure on request to execute same within one business day of receipt, any documents, financing statements, UCC or other forms, or instruments, including any amendment thereof, or consents to orders, as counsel for CMG may reasonably require for the purpose of effectuating the sales and/or assignments contemplated hereunder, and the continuation or perfection of any security interest identified or provided for herein, including any instrument related to effectuating any assignment contemplated by the preceding paragraph, Grantor hereby authorizes CMG, as necessary, to execute such instruments on his behalf.

Grantor ROWMEC understands that by virtue of making this Power of Attorney, it no longer has the right or authority to take the acts reflected herein, except as otherwise authorized by CMG. This instrument may not be revoked or changed except upon written agreement of CMG.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 28th day of September 2007

John P. O'Hagan, Vice President

Certified Document Number: 40678461 - Page 11 of 36

Right Of Way Maintenance Equipment Company, Inc.

ACKNOWLEDGMENT

STATE OF )
SS:
COUNTY OF )

BE IT REMEMBERED that on 10-18-2007, before me personally appeared John D. Dhegan, the President of Right Of Way Maintenance Equipment Company, Inc., who I am satisfied is authorized to execute the within Power of Attorney and who executed the within Power of Attorney and acknowledged thereon Assignment that he/they signed, sealed, and delivered the Assignment as his/their act and deed for the uses and purposes expressed therein.

Notary Public

Georgia V. Hansen

GEORGIA V. HANSEN
Notary Public
STATE OF TEXAS
My Comm. Exp. 02/21/2010

Certified Document Number: 40678461 - Page 12 of 36

SCHEDULE K

ACKNOWLEDGMENT OF ATTORNEY

I, Christopher A. Bandas am an Attorney at Law in the State of Texas with the law firm of THE BANDAS LAW FIRM (Attorneys"), which firm is counsel to the Assignor herein, RIGHT OF WAY MAINTENANCE EQUIPMENT COMPANY, INC. with respect to the prosecution on Assignor's behalf of certain litigation entitled Right of Way Maintenance Company, Inc. v. Gyro-Trac, Inc. and Gyro-Trac USA, Inc., et al. Index No. 06-4081 ((U.S.D.C. S.D.Texas) ("the Litigation"). The Litigation is the same matter in which Assignor has assigned a portion of its right, title and interest to Cambridge Management Group, LLC ("CMG" or "Assignee"), pursuant a certain "AGREEMENT ASSIGNING INTEREST IN SETTLEMENT, SECURITY AGREEMENT with LIMITED IRREVOCABLE POWER OF ATTORNEY" ("the Assignment and Security Agreement"). I hereby certify that the representations set forth in the Assignment and Security Agreement are true and accurate to the best of my knowledge as to matters which are within my knowledge. When the Recovery assigned hereunder comes into my possession, I shall hold same as the fiduciary for Assignee, CMG, will immediately notify CMG that I am in possession of moneys representing a Recovery, or a portion thereof, and will immediately deliver to CMG the portion of the Recovery due it under the Assignment and Security Agreement, pursuant to the instruction of CMG and the terms of the is Assignment and Security Agreement.

Dated:

Name:
Title:

ACKNOWLEDGMENT

BE IT REMEMBERED that on Oct. 18, 2007, before me personally appeared Christopher A. Bandas the person herein, who I am satisfied is authorized to execute the ACKNOWLEDGMENT of Attorney, and acknowledged to me that (s)he executed the same in his/her capacity as atty/CEO of the BANDAS LAW FIRM.

Notary Public

JAN L PETRUS
Notary Public
STATE OF TEXAS

Certified Document Number: 40678461 - Page 13 of 36

**SCHEDULE F**

**NOTICE OF ASSIGNMENT, IRREVOCABLE DIRECTION OF PAYMENT AND AUTHORIZATION**

To: THE BANDAS LAW FIRM
500 N. Shoreline Blvd. Suite 1020
Corpus Christi, Texas 78471.

Re: Right of Way Maintenance Company, Inc. v. Gyro-Trac, Inc. and Gyro-Trac USA, Inc., et al. Index No. 05-4081 ((U.S.D.C. S.D.Texas)

You, as Attorneys for the Assignor, RIGHT OF WAY MAINTENANCE EQUIPMENT COMPANY, INC ("ROWMEC") are hereby notified that ROWMEC, as Assignor, has transferred and assigned to CAMBRIDGE MANAGEMENT GROUP, LLC ("Assignee") the Assignor's right, title and interest in and to a portion of ROWMEC's interest in a recovery in a matter captioned Right of Way Maintenance Company, Inc. v. Gyro-Trac, Inc. and Gyro-Trac USA, Inc., et al. Index No. 05-4081 ((U.S.D.Ct.S.D.Texas) ("the Litigation"), in which you are the attorneys for Assignor, which is the same matter in which Grantor have assigned a portion of its right, title and interest to CMG to pursuant to a certain "AGREEMENT ASSIGNING INTEREST IN SETTLEMENT, SECURITY AGREEMENT with LIMITED IRREVOCABLE POWER OF ATTORNEY" ("the Assignment and Security Agreement"), dated September 28, 2007 between and among ROWMEC, CMG and you. You are hereby instructed to pay to Assignee, CMG, in accordance with the instructions and the Schedules contained herein. Although payment may be in the name of Assignor, ROWMEC, payment must be delivered to Assignee, CMG. These instructions may not be revoked or revised without the written consent of Assignee.

Dated: September 28, 2007

RIGHT OF WAY MAINTENANCE EQUIPMENT COMPANY, INC

By: [signature]
John P. O'Hagan, Sr. Vice President

**ACKNOWLEDGEMENT**

State of Texas )
)ss.
County of Montgomery )

GEORGIA V. HANSEN
Notary Public
STATE OF TEXAS
My Comm. Exp. 02/21/2010

Certified Document Number: 40678461 - Page 14 of 36

Exhibit "G"

Fees and Costs

| | |
|---|---|
| Application Fee | $200. |
| Attorney Review Fee | $100. |
| Processing Fee | $225. |
| Broker Fee | $85,000. |

Certified Document Number: 40678461 - Page 15 of 36