UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RIGHT OF WAY MAINTENANCE COMPANY | § | BANKRUPTCY NO. 09-35037 |
| | § | (Chapter 11) |
| | § | |
| *Debtor.* | § | |
| | § | |
| | § | |
| RIGHT OF WAY MAINTENANCE COMPANY | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | ADVERSARY NO. 09-03303 |
| v. | § | |
| | § | |
| CAMBRIDGE MANAGEMENT GROUP, LLC, *et al.*, | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

GYRO-TRAC, INC. AND GYRO-TRAC (USA), INC.'S
MOTION FOR SUMMARY JUDGMENT

Defendants, Gyro-Trac, Inc. and Gyro-Trac (USA), Inc. ("Gyro-Trac"), file this

Motion for Summary Judgment, as follows:

INTRODUCTORY STATEMENT & RELIEF REQUESTED

Right of Way Maintenance Company d/b/a ROWMEC ("ROWMEC") sued

Gyro-Trac in 2005 for breach of contract.   After a jury trial on the merits before United

States District Judge Gray H. Miller, ROWMEC won a final judgment against Gyro-Trac

for $3,600,000.   In this adversary proceeding, ROWMEC has again sued Gyro-Trac for

the same breaches of the same contract.    Because ROWMEC's claims against Gyro-Trac

are precluded under the doctrine of *res judicata*, this Court should grant Gyro-Trac

summary judgment.

SUMMARY JUDGMENT EVIDENCE

Gyro-Trac submits the following summary judgment evidence in support of this

motion:

Exhibit A:   Direct Examination of John O'Hagan;

Exhibit B:   ROWMEC's United States Patents;

Exhibit C:   Direct Testimony of Odette Mones;

Exhibit D:   Gyro-Trac GT-18XP Operator's Manual;

Exhibit E:   2003 Settlement Agreement;

Exhibit F:   Direct Examination of Daniel Gaudreault;

Exhibit G:   Direct Examination of Steve Quirion;

Exhibit H:   Direct Examination of Jon Flournoy;

Exhibit I:   Cross Examination of John O'Hagan;

Exhibit J:   Transcript of Pre-Trial Conference;

Exhibit K:   Plaintiff's Original Complaint;

Exhibit L:   Plaintiff's First Amended Original Complaint;

Exhibit M:   Joint Pretrial Order;

Exhibit N:   Jury Instructions;

Exhibit O:   Verdict Form;

Exhibit P:   Final Judgment;

Exhibit Q:    Defendants' Notice of Appeal; and

Exhibit R:    Affidavit of Jared G. LeBlanc.

The summary judgment evidence is incorporated by reference.    For the Court's

convenience, Gyro-Trac has used the "USCA5" page numbering on the exhibits.

RELEVANT FACTS

*The Relevant Parties and the Businesses*

ROWMEC is a closely held, family-operated Texas corporation, run by John

O'Hagan.    (Ex. A at 3635:9–14.)    ROWMEC began its existence as a land-clearing

corporation, but gradually shifted into the manufacture and sale of specialty right-of-way

clearing equipment, with a concentration on equipment used for clearing electrical and oil

and gas rights of way.    (Ex. A at 3635:2–8, & 3645:10–11.)    Between 1996 and 2001,

ROWMEC received patents for designs for cutter teeth and an associated cutter head.

(Ex. A at 3651:6–16; Ex. B.)

Gyro-Trac is in the business of manufacturing, distributing, and retailing

heavy-duty mulching equipment.    (*See* Ex. C at 3915:12–25.)    The machines are similar

to a bulldozer, except that instead of a blade, they have a horizontal, rotating drum that is

lined with metal teeth.    (Ex. D.)    When the drum is engaged, it shaves wood away from

tree trunks until they fall, and then the felled trees can be mulched with the drum when

they are on the ground.    (*See generally* Ex. D.)

*The 2003 Settlement Agreement & "Commission" Payments*

During the years leading up to 2003, Gyro-Trac used technology developed by

ROWMEC to build its tractor teeth.    (Ex. A at 3712:14–3714:18.)    The parties got into

Gyro-Trac, Inc. and Gyro-Trac (USA), Inc.'s
Motion for Summary Judgment

a dispute over the use of this technology, and entered into a settlement agreement ("2003 Settlement Agreement") resolving that dispute in November 2003, with an effective date of September 12, 2003.   (Ex. A at 3712:14–3714:18 & Ex. E.)   The 2003 Settlement Agreement created a dealer relationship in which ROWMEC acted as the exclusive dealer for Gyro-Trac's products in a five-state area including Texas.   (Ex. E. at ¶ 1.)

In addition to setting up the dealership, Gyro-Trac agreed to pay ROWMEC commissions on equipment which used the ROWMEC technology.   (Ex. E. at ¶ 1.) After the 2003 Settlement Agreement was signed, Gyro-Trac used ROWMEC's technology, and paid commissions to ROWMEC.   (Ex. G. at 3416:6–3419:2.)   The 2003 Settlement Agreement set forth a commission structure on all sales of cutter heads and cutter teeth "in accordance with designs developed by ROWMEC . . . ." (Ex. E. at ¶¶ 4 & 5.)   In addition to paying commissions on new machines using the swing tooth system, Gyro-Trac also paid commissions on sales of used machines which used swing tooth technology.[1]   (Ex. F. at 3418:18–19.)

### The Real Trouble Begins

In 2004, however, Gyro-Trac began using a different technology, developed by Denis Cimaf, for cutter head teeth.   The Denis Cimaf technology used a fixed tooth system, which is more faster and more reliable.   As a natural result of the switch from swing tooth to fixed tooth technology, the royalty payments to ROWMEC decreased dramatically.   (Ex. G at 4298:13–4299:23.)

---

[1] The GT-10 and GT-18 models used the swing tooth system that was developed by ROWMEC.   In contrast, the GT-13 and GT-25 used the fixed tooth technology that was developed by Denis Cimaf.

Gyro-Trac, Inc. and Gyro-Trac (USA), Inc.'s
Motion for Summary Judgment

Although Gyro-Trac was phasing out its use of ROWMEC technology, Gyro-Trac continued to work with ROWMEC to sell equipment using the new technology in Texas and the remainder of the 5-state territory.   (Ex. A at 3787:8–3788:20.)   As the ROWMEC technology was phased out and the Denis Cimaf technology phased in, the royalty payments made by Gyro-Trac to ROWMEC got smaller and smaller, and the balance owed by ROWMEC to Gyro-Trac for equipment ordered, received and re-sold by ROWMEC became greater and greater.   (Ex. G at 4298:13–4302:25.)

Ultimately, Gyro-Trac delivered to ROWMEC machines and other equipment valued at $695,000, for which Gyro-Trac was never paid.   (Ex. G at 3518:21.)   In many cases, these machines were re-sold to ROWMEC customers, but Gyro-Trac did not receive payment.   (Ex. G at 3518:21.)   There was no dispute as to whether or not ROWMEC owed Gyro-Trac money for the equipment.   (*See* Ex. F at 3529:24–25.) The only question was how much was owed.   (*See* Ex. F at 3529:14–15.)

Meanwhile, Gyro-Trac received complaints from customers regarding ROWMEC's customer service.   (Ex. F at 3513:23; 3542:22 & 3543:5–6; Ex. H at 3600:5–12; 3602:20–21.)   As the end of the first year of operations under the 2003 Settlement Agreement approached, ROWMEC had failed to reach its target sales figure to maintain dealership status.   (Ex. H at 3565:4-10.)   Gyro-Trac stepped in to assist ROWMEC in reaching the target sales so that ROWMEC could maintain its dealership status.   (Ex. H at 3612:21.)   Over a two–year period, ROWMEC sold only five machines, a number so low that it was "ridiculously out of line with the market" for ROWMEC's territory.   (Ex. H at 3606:24–25.)

In the face of ROWMEC's unpaid $700,000 account, Gryo-Trac had to put

ROWMEC on a "cash only" basis.   ROWMEC's principal, John O'Hagan, testified at

trial that the main reason that ROWMEC did not pay its bill was that it was not getting

commission payments on the fixed tooth technology.   (Ex. I at 3807:15–20.)

### The 2005 Lawsuit

ROWMEC filed suit claiming that it was entitled to payments on the Cimaf

Technology, which neither it nor Gyro-Trac played any role in developing.   (*See* Ex. K at

¶¶ 7–11.)   Because the distributorship was an abject failure, in February 2006,

Gyro-Trac terminated ROWMEC's distributorship.   (Ex. L at 77–78.)   In response,

ROWMEC filed its First Amended Original Complaint and Application for Temporary

Restraining Order and Injunction on February 21, 2006.   (Ex. L.)   The district court

denied injunctive relief.

In the 2005 Lawsuit, ROWMEC asserted claims against Gyro-Trac for breach of

contract, trade disparagement in violation of the Lanham Act, business disparagement,

tortious interference, and for violations of Chapter 19 of the Texas Business & Commerce

Code.   (Ex. L at ¶¶ 17–26.)   As part of its breach of contract claims, ROWMEC

asserted that Gyro-Trac failed to pay commissions on ROWMEC technology that was

licenced to Gyro-Trac in the 2003 Settlement Agreement.   (Ex. L at ¶¶ 7–11.)

### The 2007 Jury Trial

On May 14, 2007, ROWMEC and Gyro-Trac filed their Joint Pre-Trial Order.

(Ex. M.)   The Pre-Trial Order included ROWMEC's claims for unpaid commissions on

the fixed tooth technology and on the swing tooth technology.   (Ex. M.)   In its

Gyro-Trac, Inc. and Gyro-Trac (USA), Inc.'s
Motion for Summary Judgment

contentions, ROWMEC alleged that Gyro-Trac breached the 2003 Settlement Agreement

by:

> f.    Failing to pay Rowmec commission on Rowmec Cutter Head
> and Cutter Teeth (excluding the GT-25 and 70HF cutting
> head) sold by Gyro-Trac, Inc. or Gyro-Trac (USA), Inc. in the
> United States and its territories during 2003-2010; [and]
>
> g.    Failing to pay Rowmec commission on the GT-25 and the
> 700HF Cutter Heads which were manufactured in accord
> with the designs developed by Rowmec in violation of ¶¶ 4, 5
> of the Agreement;

(Ex. M at 2128.)   ROWMEC would not, however, present these claims to the jury.

At the pre-trial conference before Judge Miller, ROWMEC specifically withdrew

its claims for unpaid commissions:

> THE COURT:   Well, isn't the question whether it's related technology?
> Isn't that the—
>
> MS. SHACKELFORD:   That's the issue. Actually, I think we can shortcut
> this altogether because we have decided to withdraw the GT-25
> commission claim and the 700FH [sic] cutter head commission claim
> altogether. So, that just takes care of this problem.
>
> MR. KEENAN:   I'm not sure I'm following you.
>
> MS. SHACKELFORD:   **We are no longer making a claim for
> commissions to ROWMEC from Gyro-Trac based upon sales of
> the GT-25 outside our territory, claiming that it's our
> technology.**
>
> MR. BANDAS:   If I may, Your Honor.
>
> THE COURT:   Yes, sir.
>
> MR. BANDAS:   To clarify exactly what we're doing here, there was a part
> of our case that was related to getting commission payments on the
> GT-25.   Okay.   And those were for sales outside of our territory
> based on our theory that that technology was based on the
> ROWMEC technology.   And that's really what was addressed in

> the Court's order on summary judgment.   That small piece of that issue is being removed from the case.   **However, just to be clear, we're still pursuing our claims that they should not have terminated the dealership, that we should have had the right to sell GT-25's in our exclusive territory.   And the lost profits analysis based on those lost sales is still the central part of our case.**   It's just strictly on a commission part of the GT-25.

(Ex. J at 2899:22–2900:23 (emphasis added.)   Ironically, dropping the claims for unpaid commissions was actually *better* for ROWMEC than it was for Gyro-Trac.

In any event, ROWMEC proceeded to trial on two of its claims.   First, ROWMEC asserted that that Gyro-Trac breached the 2003 Settlement Agreement by failing to deliver consignment machines for ROWMEC, and by terminating the dealership without cause.   (Ex. N at 2839–2842.)   The damages sought under this claim were solely lost future profits; ROWMEC did *not* submit its claims for unpaid commissions to the jury.   (Ex. N at 2839.)   Second, ROWMEC advanced its claim that Gyro-Trac violated Chapter 19 of the Texas Business & Commerce Code by terminating the dealership without cause.   (Ex. N at 2839–2842.)

The jury of eight reached a verdict in ROWMEC's favor on June 7, 2007, answering "yes" to both the question regarding breach of contract and the question regarding the Chapter 19 claims.   (Ex. O at 2881–2886.)   On June 12, 2007, the Court entered the Final Judgment in ROWMEC's favor in the amount of $3,600,000.   (Ex. P.)

Gyro-Trac appealed the judgment to the Fifth Circuit.   (Ex. Q.)   On December 18, 2008, the Fifth Circuit affirmed the Final Judgment.

### The 2009 Adversary Proceeding

On July 13, 2009, ROWMEC filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the Southern District, which is Cause No. 09-35037.   Shortly thereafter, Gyro-Trac was served with ROWMEC's Complaint in this Adversary Proceeding and has filed an answer.   (Dkt. # 38.)   In that pleading, ROWMEC asserts various claims against several parties, including its former trial counsel, and *ROWMEC has re-asserted claims against Gyro-Trac for breach of the 2003 Settlement Agreement.*   (*See* Dkt. #1 at ¶¶ 67–71.)

### SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Brown v. City of Houston, Tex.*, 337 F.3d 539, 540-41 (5th Cir. 2003).   Summary judgment is appropriate unless the Court determines that, "a rational trier of fact could find for the nonmoving party based upon the record evidence before the court."   *See James v. Sadler*, 909 F.2d 834, 837 (5th Cir.1990).

### ARGUMENT & AUTHORITY

ROWMEC's claims against Gyro-Trac are barred by "pure" *res judicata* as a matter of law.   *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994) ("Claim preclusion, or 'pure' res judicata, is the 'venerable legal canon' that insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits."); *see also Eubanks v. Federal Deposit Ins. Corp.*, 977 F.2d 166, 169 (5th

Cir.1992).    Gyro-Trac is entitled to summary judgment because it has proved all four

elements of claim preclusion:    (A) the parties were the same in both suits; (B) the prior

court was a court of competent jurisdiction; (C) the prior action ended with a final

judgment on the merits; and (D) the claim in the prior suit was the same as the claim in

this one.

   First, in the 2005 Lawsuit, ROWMEC was the plaintiff and Gyro-Trac, Inc. and

Gyro-Trac (USA), Inc. were the defendants. In this adversary, ROWMEC the plaintiff and

Gyro-Trac, Inc. and Gyro-Trac (USA), Inc. are defendants.    (*Compare* Exs. K & L *with*

Dkt. #1.)    Second, there can be no serious dispute that the United States District Court

for the Southern District of Texas is a Court of competent jurisdiction.      Third, the

district court entered a final judgment on the merits after a jury verdict.    (See Exs. N, O

& P.)    Fourth, in this adversary proceeding, ROWMEC is suing Gyro-Trac for breach of

the 2003 Settlement Agreement, just like it did in the 2005 Lawsuit. (*Compare* Exs. K–P

*with* Dkt. #1.)

   To avoid this result, ROWMEC might argue that its contract claims are not subject

to claim preclusion because they are "new" or that they were dropped before trial.    On

the contrary, claim preclusion applies not only to the claims that were asserted in the

previous action, but it likewise bars "bars all claims that were *or could have been*

*advanced* in support of the cause of action on the occasion of its former adjudication, . . .

not merely those that were adjudicated." *See In re Howe*, 913 F.2d 1138, 1144 (5th Cir.

1990) (emphasis added), citing *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th

Cir.1983) (en banc); and *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979, 983 (5th

Cir.1990).    In the 2005 Lawsuit, ROWMEC voluntarily withdrew its claims for

commissions (Ex. J at 2899:22–2900:23), so it is barred from re-asserting them here.    *See*

*In re Howe*, 913 F.2d at 1144.

FOR THESE REASONS, Defendants, Gyro-Trac, Inc. and Gyro-Trac (USA), Inc.,

respectfully requests that Plaintiff, Right of Way Maintenance Company d/b/a

ROWMEC, take nothing by reason of this action, and for all other relief in law or in

equity to which they are justly entitled.

Respectfully submitted,

By:___/s/ Jared G. LeBlanc by permission_____
        James P. Keenan
        Texas Bar No. 1167850
        Federal Bar No. 1421

ATTORNEY-IN-CHARGE FOR DEFENDANTS
GYRO-TRAC, INC. AND GYRO-TRAC (USA), INC.

OF COUNSEL:

Ann E. Webb
Texas Bar No. 21017600
Federal Bar No. 10243

Jared G. LeBlanc
Texas Bar No. 24046279
Federal Bar No. 575408

BUCK, KEENAN, GAGE, LITTLE & LINDLEY, L.L.P.
5100 Bank of America Center
700 Louisiana
Houston, Texas    77002
(713) 225-4500
(713) 225-3719 fax

Gyro-Trac, Inc. and Gyro-Trac (USA), Inc.'s
Motion for Summary Judgment

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Gyro-Trac, Inc. and Gyro-Trac (USA), Inc.'s Motion for Summary Judgment and proposed order were forwarded to all counsel of record in this cause by the Clerk's CM/ECF service, unless otherwise noted, on August 29, 2009.


        /s/ Jared G. LeBlanc
        Jared G. LeBlanc