## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **RIGHT OF WAY MAINTENANCE** | § | **Case No. 09–35037** |
| **EQUIPMENT COMPANY,** | § | |
| | § | |
| Debtor. | § | **Chapter 11** |
| | § | |
| **RIGHT OF WAY MAINTENACE** | § | |
| **EQUIPMENT COMPANY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **Adversary Proceeding 09–03303** |
| | § | |
| **CAMBRIDGE MANAGEMENT** | § | |
| **GROUP, LLP, et al.,** | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS THE SHACKELFORD LAW FIRM
## AND PATRICIA A. SHACKELFORD'S MOTION TO DISMISS
## CERTAIN OF PLAINTIFF'S CLAIMS UNDER RULES 12(b)(6) AND 9(b)

**CRUSE, SCOTT, HENDERSON & ALLEN, L.L.P.**
Billy Shepherd
Texas Bar No. 18219700
Federal I.D. No. 10666
Lauren Held Harris
Texas Bar No. 24046052
Federal I.D. No. 569704
2777 Allen Parkway, 7th Floor
Houston, Texas  77019–2133
Telephone No. (713) 650–6600
Telecopier No. (713) 650–1720

**ATTORNEYS FOR DEFENDANTS
THE SHACKELFORD LAW FIRM AND
PATRICIA A. SHACKELFORD**

September 8, 2009

# Table Of Contents

**Page**

Table Of Contents .................................................................................................................. i

Index Of Authorities ............................................................................................................. ii

Statement Of The Case/Nature And Stage Of The Proceeding ........................................... 1

Background ........................................................................................................................... 3

Summary Of The Argument ................................................................................................. 8

Issues To Be Ruled On/Standard Of Review ...................................................................... 8

    A.     Rule 12(b)(6). ................................................................................................. 8

    B.     Rule 9(b). ....................................................................................................... 9

Argument ............................................................................................................................. 9

    A.     Rowmec Failed To State A Claim For Preferential Transfer. ................................. 9

          (i)     The Law. ........................................................................................ 9

          (ii)    The Law Applied To The Facts. .................................................. 12

    B.     Romwec Failed To State A Claim Of Equitable Subordination. ......................... 15

          (i)     The Law. ...................................................................................... 15

          (ii)    The Law Applied To The Facts. .................................................. 16

    C.     Under Texas Law, No Breach Of Contract Action Exists In The Legal Malpractice Context. .............................................................................. 17

          (i)     The Law. ...................................................................................... 17

          (ii)    The Law Applied To The Facts. .................................................. 17

    D.     Rowmec Failed To State A Claim For Fraud Against Shackelford. .................... 18

          (i)     The Law. ...................................................................................... 18

          (ii)    The Law Applied To The Facts. .................................................. 18

    E.     Rowmec Failed To State A Claim For Conspiracy To Commit Fraud Or Aiding And Abetting Fraud. ............................................................... 20

          (i)     The Law. ...................................................................................... 20

          (ii)    The Law Applied To The Facts. .................................................. 21

Conclusion ......................................................................................................................... 21

Certificate Of Service ........................................................................................................ 23

H:\DATA\TLI001\30565\484778.DOC

## Index Of Authorities

**Page**

**Cases**

*Averitt v. PriceWaterhouseCoopers LLP*
    89 S.W.3d 330
    (Tex. App.—Fort Worth 2002, no pet.) .................................................................. 17, 18

*Barcelo v. Elliott*
    923 S.W.2d 575 (Tex. 1996) .............................................................................. 17

*Bell Atlantic Corp. v. Twombly*
    —U.S.—, 127 S.Ct. 1955,
    167 L.Ed.2d 929 (2007) ........................................................................................ 8

*Black v. Willis*
    758 S.W.2d 809
    (Tex. App.—Dallas 1988, no writ) ..................................................................... 18

*Bradford v. Vento*
    48 S.W.3d 749 (Tex. 2001) .................................................................................. 18

*Branch v. Hill, Holliday, Connors, Cosmopoulos, Advertising*
    *(In re Bank of New Eng.)*
    165 B.R. 972 (Bankr. D. Mass. 1994) ............................................................. 11

*Collins v. Morgan Stanley Dean Witter*
    224 F.3d 496 (5th Cir. 2000) ............................................................................... 3

*Daniels v. Pecan Valley Ranch, Inc.*
    831 S.W.2d 372
    (Tex. App.—San Antonio 1992, writ denied)................................................... 11

*Davis v. Bayless*
    70 F.3d 367 (5th Cir. 1995) ................................................................................. 3

*Dorsey v. Portfolio Equities, Inc.*
    540 F.3d 333 (5th Cir. 2008) ...................................................................... 9, 14, 18, 19

*Ebert v. Blackmax Downhole Tools*
    *(In re Gibraltar Resources)*
    197 B.R. 246 (Bankr. N.D. Tex. 1996)............................................................. 12

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*
    51 S.W.3d 573 (Tex. 2001).................................................................................. 20

ii

*Ersek v. Davis & Davis*, P.C.
    69 S.W.3d 268
    (Tex. App.—Austin 2002, pet. denied)............................................................. 18

*First Southern Properties, Inc. v. Vallone*
    533 S.W.2d 339 (Tex. 1976)............................................................................. 11

*French v. Glorioso*
    94 S.W.3d 739
    (Tex. App.—San Antonio 2002, no pet.)......................................................... 18

*Gonzales v. Daniel*
    854 S.W.2d 253
    (Tex. App.—Corpus Christi 1993, no writ)...................................................... 11

*Greathouse v. McConnell*
    982 S.W.2d 165
    (Tex. App.—Houston [1st Dist.] 1998, pet. denied)................................... 17, 18

*Guidry v. Bank of LaPlace*
    954 F.2d 278 (5th Cir. 1992) ............................................................................. 9

*Highlander Crusader Offshore Partners, L.P.*
    *v. LifeCare Holdings, Inc.*
    No. 3:08–cv–0102–B
    2008 WL 3925272, * 14
    (N.D. Tex. Aug. 27, 2008) ......................................................................... 20, 21

*In re A. Angelle*
    230 B.R. 287 (Bankr. W.D. La. 1998) ............................................................. 16

*In re Alphastar Ins. Group Ltd.*
    183 B.R. 231 (Bankr. S.D.N.Y. 2008) ....................................................... 15, 16

*In re Casco Chem. Co.*
    335 F.2d 645 (5th Cir. 1964) ..................................................................... 10, 12

*In re Celotex Corp.*
    128 B.R. 478 (Bankr. M.D. Fla. 1991) ............................................................ 10

*In re Comprop Investment Properties, Ltd.*
    81 B.R. 101 (Bankr. M.D. Fla. 1987) .............................................................. 11

*In re Oliver*
    142 B.R. 486 (Bankr. M.D. Fla. 1992) ............................................................ 13

*In re Ramba, Inc.*
    437 F.3d 457 (5th Cir. 2006) ........................................................................... 10

iii

*In re Southland Securities Corp.*
    365 F.3d 353 (5th Cir. 2004) ........................................................... 16

*In re United States Abatement Corp.*
    39 F.3d 556 (5th Cir. 1994) ................................................... 15, 16, 17

*In re Webber*
    350 B.R. 344 (Bankr. S.D. Tex. 2006) ..................................... 20, 21

*Judwin Properties, Inc. v. Griggs & Harrison*
    911 S.W.2d 498
    (Tex. App.—Houston [1st Dist.] 1995, writ denied) ..................... 18

*Kane Enters. v. MacGregor (USA) Inc.*
    322 F.3d 371 (5th Cir. 2003) ............................................................ 8

*Marre v. United States*
    117 F.3d 297 (5th Cir. 1997) ......................................................... 13

*Matter of Braen*
    72 Bankr. 56 (Bankr. D. N.J. 1987) .............................................. 11

*Mid–Jersey Nat'l Bank v. Fidelity–Mortgage Investors*
    518 F.2d 640 (3d Cir. 1975) .......................................................... 10

*Murray v. Earle*
    405 F.3d 278 (5th Cir. 2005) ......................................................... 20

*Newby v. Enron Corp.*
    *(In re Enron Corp. Securities, Derivatives & ERISA Litigation)*
    Nos. H–01–3624, H–03–1087, H–03–3320,
    H–03–5332, H–03–5333, H–03–5334,
    H–03–5335, H–04–3330,
    04–3331, 04–4455, H–01–3914,
    2006 WL 3716669, *8 n. 7
    (S.D. Tex. Dec. 12, 2006) .............................................................. 21

*O'Kane v. Coleman*
    No. 14–06–00657–cv
    2008 WL 2579832
    (Tex. App.—Houston [14th Dist.] Jul. 1, 2008, no pet.) ........... 20, 21

*Saper v. West*
    263 F.2d 422 (2nd Cir. 1959) ........................................................ 10

*Schlumberger Tech. Corp. v. Swanson*
    959 S.W.3d 171 (Tex. 1997) .......................................................... 14

*Shron v. M & G Promo Servs.*
    *(In re Anthony Sicari, Inc.)*
    151 B.R. 60 (S.D.N.Y. 1993) ................................................................... 10

*Tel–Phonic Services, Inc. v. TBS International, Inc.*
    975 F.2d 1134 (5th Cir. 1992) ................................................................... 9

*Travis v. Irby*
    326 F.3d 644 (5th Cir. 2003) ..................................................................... 3

*Trendsetter Investors, Inc. v. Hyperdynamics Corp.*
    Civil Action No. H–06–0746
    2007 WL 172627 (S.D. Tex. Jan. 18, 2007) ................................................ 3

*Williams v. WMX Technolgies, Inc.*
    112 F.3d 175 (5th Cir. 1997) ..................................................................... 9

## **Statutes**

11 U.S.C. § 101(31) ................................................................................ 13

11 U.S.C. § 510 ............................................................................ 3, 8, 15, 16, 22

11 U.S.C. § 541 ..................................................................................... 12

11 U.S.C. § 542(a) ................................................................................ 11

11 U.S.C. § 543 ..................................................................................... 11

11 U.S.C. § 544 ..................................................................................... 11

11 U.S.C. § 547 ......................................................................... 3, 8, 11, 15, 21

11 U.S.C. § 547(b) .......................................................................... 9, 10, 13

11 U.S.C. § 550 ............................................................................... 3, 8, 21

11 U.S.C. § 550(a)(2) ......................................................................... 12, 15

28 U.S.C. § 1334 ................................................................................. 2, 8

Tex. Bus. & Comm. Code § 19.01 ............................................................. 4

Tex. Prop. Code § 12.014 ...................................................................... 13

## **Rules**

Fed. R. Civ. P. 12(b)(6) ........................................... 1, 3, 8, 14, 17, 18, 19, 21, 22

Fed. R. Civ. P. 8(b) ............................................................................... 8

Fed. R. Civ. P. 9(b) .............................................. 1, 3, 9, 14, 16, 17, 19, 21, 22

Fed. R. Evid. 201 ................................................................................. 3

H:\DATA\TLI001\30565\484778.DOC

vi

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RIGHT OF WAY MAINTENANCE | § | Case No. 09–35037 |
| EQUIPMENT COMPANY, | § | |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |
| RIGHT OF WAY MAINTENACE | § | |
| EQUIPMENT COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adversary Proceeding 09–03303 |
| | § | |
| CAMBRIDGE MANAGEMENT | § | |
| GROUP, LLP, et al., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS THE SHACKELFORD LAW FIRM
## AND PATRICIA A. SHACKELFORD'S MOTION TO DISMISS
## CERTAIN OF PLAINTIFF'S CLAIMS UNDER RULES 12(b)(6) AND 9(b)

### Statement Of The Case/Nature And Stage Of The Proceeding

1.      Under Rules 12(b)(6) and 9(b), defendants The Shackelford Law Firm and Patricia A. Shackelford (collectively, "Shackelford") move for dismissal of certain causes of action in Plaintiff Right Of Way Maintenance Equipment Company's ("Rowmec") Original Complaint (Doc. No. 1) against them.

2.      This adversary proceeding arises out of a legal malpractice claim Rowmec asserts against Shackelford and her co–counsel, Christopher Bandas, The Bandas Law Firm, L.P.,

Jeffery Meyer, and Moulton & Meyer, L.L.P. (collectively, "Bandas").  Shackelford denies that this is a core proceeding under 28 U.S.C. § 1334.  Shackelford and Bandas represented Rowmec in a lawsuit against Gyro–Trac, Inc. ("Gyro–Trac"), and obtained a fantastic $3.6 million judgment in favor of Rowmec.  *See Doc. No. 1, ¶¶ 19–40.*  Under the engagement agreements between Rowmec, Bandas, and Shackelford, Rowmec granted a lien and conveyed 45% of the recovery and such additional amount as needed for expenses to Bandas.  *See Doc. No. 1, Exhibit 3 and Exhibit 5.*  Rowmec granted a lien and conveyed 7.5% of the 45% conveyance to Shackelford.  *See Doc. No. 1, Exhibit 4.*  Upon the Fifth Circuit's affirmation of the trial court's $3.6 million judgment in favor of Rowmec, the money recovered was interplead into the registry of the State Court.  *See Doc. No. 1, ¶ 48.*  All but $576,185.40 has been disbursed by court order. *See Doc. No. 1, ¶ 52.*

3.      In the interpleader action in State Court, Rowmec sued Bandas and Shackelford for malpractice.  *See Doc. No. 1, ¶ 51.*  With nearly identical claims as asserted in its Complaint here, Rowmec alleged that Bandas and Shackelford committed malpractice in their representation of Rowmec in connection with the Gyro–Trac case.  *Id.*  However, Rowmec failed to timely designate or produce an expert, as required for a legal malpractice claim, failed to provide any documents in discovery, and failed to take any depositions.  On July 7, 2009, Bandas filed a "no–evidence" motion for summary judgment to dispose of Rowmec's purported legal malpractice claims.  *See Doc. No. 1, ¶ 56.*  On July 13, 2009, Rowmec filed Chapter 11, and subsequently refiled its purported legal malpractice claims in this adversary proceeding.  *See Doc. No. 1.*

2

4.      Rowmec purportedly asserts five causes of action against Shackelford for breach of fiduciary duty, professional negligence (legal malpractice), preferential transfer pursuant to 11 U.S.C. §§ 547 and 550, equitable subordination pursuant to 11 U.S.C. § 510, fraud, and breach of contract.  *See Doc. No. 1, ¶¶ 72–109*.  Rowmec seeks equitable relief, including an order setting aside its engagement agreements with Bandas and Shackelford, and fee forfeiture.  *Id*.  Rowmec seeks money damages from Shackelford, including any purported damages suffered as a result of Shackelford's purported negligence, and the purported damages Rowmec suffered as a result of entering into a certain loan agreement regarding the proceeds of the $3.6 million judgment.  *Id*.  Rowmec also seeks punitive damages and an accounting.  *Id*.  For the reasons we discuss in detail below, certain of Rowmec's causes of action against Shackelford fail to state claims upon which relief may be granted, and fail to specify with requisite particularity allegations of fraud and mistake.  *See* FED. R. CIV. P. 12(b)(6); 9(b).

## **Background**

5.      Rowmec's claims against Shackelford arise entirely from Bandas and Shackelford's representation of Rowmec in a lawsuit against Gyro–Trac ("the Gyro Trac case").  *See* No. 4:05–cv–04081, *Rowmec v. Gyro Trac, Inc., et al.*, in the United States District Court for the Southern District of Texas, Houston Division (Judge Gray Miller, presiding).[1]  Rowmec is a

---

[1] Because federal courts are permitted to consider matters of public record when deciding a Rule 12(b)(6) motion to dismiss, the Court may take judicial notice of the records from related cases.  *See* FED. R. EVID. 201; *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995).  The Court is further permitted to consider, as part of Rowmec's pleadings in this case, any other documents and/or records that are part of the record in this case because those documents and/or records are referenced in the Complaint and are central to Rowmec's claims.  *See Trendsetter Investors, Inc. v. Hyperdynamics Corp.*, Civil Action No. H–06–0746, 2007 WL 172627, at *15 (S.D. Tex. Jan. 18, 2007) (slip copy) ("The Fifth Circuit is among those circuits holding that documents a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.") (citing, *inter alia, Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)).

3

manufacturer of clearing equipment, specifically machines that clear underbrush for roadway management projects and oil field services.

6.      In the Gyro–Trac case, Rowmec asserted claims for breach of a 2003 Settlement Agreement and breach of the Texas Farm, Industrial and Outdoor Power Equipment Dealer Act, TEX. BUS. & COMM. CODE § 19.01, *et seq.  See Doc. No. 1, ¶ 19.*  On October 26, 2006, Rowmec filed a motion for partial summary judgment seeking interpretation of paragraph 5 of the 2003 Settlement Agreement, which Rowmec contended entitled it to receive a commission for *any* cutter head and cutter teeth product sold by Gyro–Trac, regardless of whether such products used designs developed by Rowmec.  *See No. 4:05–cv–04081, Doc. No. 45.*

7.      Judge Miller referred the motion for partial summary judgment to Magistrate Judge Nancy K. Johnson.  On February 7, 2007, Judge Johnson recommended that the district court deny Rowmec's motion for partial summary judgment based on her finding that the capitalization of the defined phrase "Cutter Head and Cutter Teeth Products" referred to "all cutter heads and cutter teeth in accordance with the designs developed by Rowmec."  *See No. 4:05–cv–04081, Doc. No. 55.*  On March 7, 2007, Judge Miller adopted Judge Johnson's findings and recommendation.  *See No. 4:05–cv–04081, Doc. No. 58.*

8.      On May 2, 2007, Bandas and Rowmec retained Shackelford to assist with trial preparation, trial briefing, jury charge, and possible appeal of the Gyro–Trac case.  *See Doc. No. 1, Exhibit 4.*  Shackelford's engagement agreement specifically stated that "[t]he engagement is limited to pre–trial, trial, and post–trial briefing."  *Id.*  For Shackelford's services, Bandas and Rowmec gave Shackelford a 7.5% interest in any attorney's fee recovery.  *Id.*  Shackelford would also be reimbursed for any reasonable and necessary expenses incurred during the

4

representation.  *Id*.  Shackelford's fee did not change any fee agreement between Bandas and Rowmec.  *Id*.

9.      Shackelford's engagement agreement became part of Bandas' engagement agreement with Rowmec, in which Rowmec sold, conveyed, granted and assigned all of Rowmec's right, title, and interest in a recovery to the attorney to pay fees and expenses and pass–through interest on same.  *See Doc. No. 1, Exhibit 2*.

10.     On May 29, 2007, 22 days after Shackelford was retained, trial of the Gyro–Trac case commenced.   At the pretrial conference, Rowmec withdrew a damages question on commissions due under paragraph  of the 2003 Settlement Agreement.  *See Doc. No. 1, ¶ 33*.  On June 6, 2007, the jury found in Rowmec's favor, and on June 12, 2007, Judge Miller entered judgment in favor of Rowmec and against Gyro–Trac for $3.6 million.  *See No. 4:05–cv–04081, Doc. No. 150, Doc. No. 154*.

11.     On July 20, 2007, Gyro–Trac appealed.  *See No. 4:05–cv–04081, Doc. No. 66*.  On September 25, 2007, Bandas signed a supplemental fee agreement with Rowmec that increased his contingency fee to 45% of the "gross proceeds of any collection or settlement from or against" Gyro–Trac.  *See Doc. No. 1, Exhibit 5*.  On April 16, 2008, Gyro–Trac obtained a $3.6 million letter of credit ("LOC") to supersede the judgment on appeal.  *See Doc. No. 1, ¶ 43*.  On December 18, 2009, the Fifth Circuit affirmed the trial court's $3.6 judgment in favor of Rowmec.  *See Doc. No. 1, ¶ 44*; *Right of Way Maintenance Company v. Gyro–Trac, Inc.*, 303 Fed. Appx. 229 (5th Cir. 2008).

12.     On October 17, 2008, and while the judgment was on appeal, Rowmec pledged its interest in the judgment, among other things, to Cambridge Management LLC ("Cambridge") in

<div align="center">5</div>

exchange for an upfront payment of $695,000.00.  *See Doc. No. 1, ¶ 42.*  Under the agreement between Cambridge and Rowmec, Rowmec owed Cambridge $1,052,007.24 at the end of a 180–day term.  *Id.*  Rowmec failed to make complete payment under the agreement.  *Id.*

13.     While the judgment was on appeal, Rowmec's principals purportedly requested that Bandas re–assert the claim for lost commissions under paragraph 5 of the 2003 Settlement Agreement, the claim that was dropped at the pretrial conference.  *See Doc. No. 1, ¶¶ 45–46.*  Rowmec alleges that Bandas, in the presence of Shackelford, represented that he could reassert this claim, and that he would do so after the judgment was entered.  *See Doc. No. 1, ¶ 35.*  Rowmec's allegation is false.

14.     On January 8, 2009, Rowmec's new attorney advised Bandas that Rowmec contested any distribution of the proceeds of the $3.6 million LOC.  *See Doc. No. 1, ¶47.*  That same day, Bandas filed a declaratory judgment action and interpleader of the LOC in the 113th Judicial District of Harris County, Texas ("the 113th Court").  *See Doc. No. 1, ¶ 48.*

15.     On February 2, 2009, the 113th Court ordered Bandas to receive the proceeds of the LOC, deliver to Cambridge the portion of the proceeds it was due under the agreement with Rowmec, and deposit the remaining funds into the registry of the court.  *See Doc. No. 1, ¶49; Exhibit A attached.*  On February 18, 2009, Bandas deposited $2,196,185.40 into the registry of the court.  *See Doc. No. 1, ¶ 49.*  Rowmec alleges that Bandas then wired $1,403,814.60 to Cambridge.  *Id.*

16.     On February 18, 2009, Rowmec asserted a counterclaim and third party claims against Bandas and Shackelford for actions under the DTPA, negligent misrepresentation,

17.     On March 13, 2009, the 113th Court granted Bandas' motion for Partial Summary Judgment based on his declaratory judgment action seeking enforcement of the terms of his fee agreement with Rowmec.  *See Exhibit B attached.*  Rowmec failed to respond to Bandas' Motion for Partial Summary Judgment, and Rowmec failed to appear at the hearing on same.  *Id.*; *see Doc. No. 1, ¶ 52.*  The 113th Court released to Bandas as payment of his contingency fee $1,620,000.00, an amount equivalent to 45% of $3,600,000.00, from the funds in the State Court's registry.  *Id.*  The balance remaining in the registry is $576,185.40.  *See Doc. No. 1, ¶ 52.*

18.     On July 7, 2009, Bandas filed a no–evidence summary judgment to dispose of Rowmec's legal malpractice claims against himself and Shackelford because Rowmec failed to timely designate experts.  *See Doc. No. 1, ¶ 56.*  On July 13, 2009, Rowmec filed a petition for Chapter 11 reorganization.   On August 5, 2009, Rowmec filed its Complaint in this adversary proceeding, reasserting the same claims of legal malpractice upon which the 113th Court was about to rule.

19.     The majority of Rowmec's complaints against Shackelford center around Rowmec's apparent displeasure that Bandas and Shackelford did not submit to the jury the claim for lost commissions based on paragraph 5 of the 2003 Settlement Agreement, despite the fantastic result of a $3.6 million judgment.  *See, generally, Doc. No. 1.*

7

## Summary Of The Argument

20.     Under Rules 12(b)(6) and 9(b), certain causes of action and claims contained in Rowmec's Complaint against Shackelford should be dismissed for the following reasons:

- Rowmec failed to state a claim of preferential transfer under 11 U.S.C. §§ 547 and 550;

- Rowmec failed to state a claim of equitable subordination under 11 U.S.C. § 510;

- under Texas law, there is no breach of contract action in the legal malpractice context;

- Rowmec failed to state any claim of fraud; and

- Rowmec failed to state a claim for conspiracy to commit fraud or aiding and abetting fraud.

21.     Because Rowmec failed to state a claim for a preferential transfer and equitable subordination, this adversary proceeding is not a core proceeding under 28 U.S.C. § 1334. Subject to this Motion to Dismiss, Shackelford separately files an answer to Rowmec's breach of fiduciary duty and professional negligence claims pursuant to FED. R. CIV. P. 8(b).

## Issues To Be Ruled On/Standard Of Review

### A.     Rule 12(b)(6).

22.     A court should dismiss a complaint under Rule 12(b)(6) if it appears that the plaintiff cannot prove a plausible set of facts in support of his claim that would entitled him to relief.  FED. R. CIV. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  To avoid dismissal for failure to state a claim under Rule 12(b)(6), a plaintiff must plead specific facts, not mere conclusory allegations.  *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).  An appellate court reviews *de novo* a district

court's dismissal under Rule 12(b)(6). *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

**B.**    **Rule 9(b).**

23.    Federal Rule of Civil Procedure 9(b) mandates that, in all averments of fraud, the circumstances constituting fraud must be stated with particularity. FED. R. CIV. P. 9(b).  "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Services, Inc. v. TBS International, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992); *see Williams v. WMX Technolgies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Rule 9(b) is interpreted strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

### Argument

**A.**    **Rowmec Failed To State A Claim For Preferential Transfer.**

    **(i)**    **The Law.**

24.    Section 547(b) of the Bankrupcty Code establishes the six elements of any preferential transfer action.  To be a preference, there must be:

    (1)    a transfer of an interest of the debtor in property;

    (2)    to or for the benefit of a creditor;

    (3)    for or on account of an antecedent debt owed by the debtor before such a transfer was made;

    (4)    made while the debtor was insolvent;

9

(5)      made on or within 90 days before the date of the filing of the petition (or one year if an insider); and

(6)      one that enables such a creditor to receive more than such creditor would receive if (A) the debtor filed under Chapter 7, and (B) the transfer had not been made.

11 U.S.C. § 547(b); *In re Ramba, Inc.*, 437 F.3d 457, 459 (5th Cir. 2006).

25.     A debtor has an interest in property if that property would have been part of the debtor's bankruptcy estate had the transfer not occurred. *In re Ramba*, 437 F.3d at 459. A trustee cannot avoid transfers of property unless the property would have been in the estate and therefore available to the debtor's general creditors. *Id.* at 459–460. When funds are interpleaded into the court and a debtor subsequently files bankruptcy, courts have found that the interpleaded funds are not "property of the estate" because they are *custodia legis*. *See*, *e.g.*, *Shron v. M & G Promo Servs. (In re Anthony Sicari, Inc.)*, 151 B.R. 60, 61 (S.D.N.Y. 1993) (deposit effected an alienation of those funds so that they were not part of the debtor's bankruptcy estate); *see also Mid–Jersey Nat'l Bank v. Fidelity–Mortgage Investors*, 518 F.2d 640 (3d Cir. 1975) (pre–code); *In re Casco Chem. Co.*, 335 F.2d 645 (5th Cir. 1964);[2] *Saper v. West*, 263 F.2d 422 (2nd Cir. 1959) (pre code); and *In re Celotex Corp.*, 128 B.R. 478 (Bankr. M.D. Fla. 1991).

26.     The reason for this rule is that, when a debtor interpleads an asset in the registry of a state court, it ceases to have the essential character of "property" because the debtor cannot control the use of the funds:

---

[2] *Casco Chem. Co.*, although a pre–code case, is useful because of its factual similarity to this case. In that case, the competing creditors of the debtor reached an agreement on the disbursement of interpleaded funds on the day before the debtor's involuntary bankruptcy was filed. The bankruptcy trustee claimed an interest in the funds which, unlike these funds, were nominally the debtor's. The Fifth Circuit held that contested funds interpleaded into the court registry were not property of the debtor's estate. *Casco*, 335 F.2d at 646–49.

10

> When the asset at issue is funds in an account, it is necessary to determine the terms under which the funds are held.  If the debtor's use of the funds is so restricted that the debtor cannot control their use, the account may not be property of the estate.  It has been held that funds may stand in a bank account in the name of the debtor, carry the debtor's tax identification number, and still not be property of the estate.

*Branch v. Hill, Holliday, Connors, Cosmopoulos, Advertising (In re Bank of New Eng.)*, 165 B.R. 972 (Bankr. D. Mass. 1994) (referencing *In re Comprop Investment Properties, Ltd.*, 81 B.R. 101, 102 (Bankr. M.D. Fla. 1987)).

27.     Further, a debtor cannot use or control the property and cannot indirectly obtain the property using the strong–arm powers of 11 U.S.C. § 544 or as a preference under 11 U.S.C. § 547.[3]  As Judge McGuire discussed:

> Prejudgment, the Debtor never had possession or control of the insurance proceeds interpled into the registry.  All property that is placed into the registry of the Court is regarded as *in custodia legis*, and, as such, is not subject to levy and sale by execution or garnishment.  *Matter of Braen*, 72 Bankr. 56, 60 (Bankr. D. N.J. 1987); *First Southern Properties, Inc. v. Vallone*, 533 S.W.2d 339, 343 (Tex. 1976); *Daniels v. Pecan Valley Ranch, Inc.*, 831 S.W.2d 372, 382 (Tex. App.—San Antonio 1992, writ denied).

> In *Braen*, the court went on to hold that, since the property at issue was *in custodia legis* and not subject to execution, the trustee's status as a hypothetical lien creditor would not defeat the creditor's interest.  72 B.R. at 60.  However, when the court enters a decree of distribution, the property is subject to levy, as to the distributee, under Texas law because the purpose of the *in custodia legis* doctrine is satisfied.  *Gonzales v. Daniel*, 854 S.W.2d 253, 256 (Tex. App.—Corpus Christi 1993, no writ).

---

[3] Attachment cases are distinguishable.  Those cases hold that funds attached by a creditor and in the registry of the clerk are "property of the estate" if, on the date of the bankruptcy, the funds have not yet been turned over to the creditor.  Those cases deal with funds previously *attached* by creditors and held by a court under writ of attachment.  Relying on 11 U.S.C. § 542(a) and 543, they reach a decision because there is no dispute that the funds are the debtor's subject to the creditors' unperfected and inchoate lien.  In other words, the debtor has title and the creditor's rights are subject to avoidance.  Those cases do not involve the voluntary interpleader of funds.

* * *

> A simple contract creditor has only the rights arising from breach of a simple contract *i.e.*, a damage claim. There would be insufficient basis for a court to conclude that a simple contract creditor could assert a direct interest relating to the interpled registry funds.

*Ebert v. Blackmax Downhole Tools (In re Gibraltar Resources)*, 197 B.R. 246, 252 (Bankr. N.D. Tex. 1996).

**(ii)**   **The Law Applied To The Facts**.

28.    Rowmec alleges that Shackelford's claim in the interpleaded funds is unsecured. *See Doc. No. 1 ¶ 92*. Rowmec alleges that as an unsecured claim, the payment of $1,620,000.00 from the State Court's registry was a preferential transfer. *Id. at ¶ 93*. Rowmec further alleges that Shackelford was a transferee of the funds received from Bandas as a preferential transfer, and that Shackelford was not a bona–fide transferee under 11 U.S.C. § 550(a)(2). *Id. at ¶ 94*. Romwec's allegations wholly fail to assert a claim for preferential transfer because the funds in the State Court's registry are not Rowmec's; they are *custodia legis*.

29.    Rowmec's purported claim against Shackelford fails to meet the first element of a preferential transfer because Rowmec has no interest in the funds deposited into the State Court's registry. Again, those funds are *in custodia legis*. *See In re Casco Chem. Co.*, 335 F.2d 645; *In re Gibraltar Resources*, 197 B.R. at 252. The funds at issue here were interpleaded and already (mostly) disbursed along with a determination of title. It would be improper to find that the funds are "property of the estate" under 11 U.S.C. § 541 because, on the petition date, Rowmec had no control over the funds and no right to direct the use of the funds. *Id*. Indeed, absent an order of the 113th Court that Rowmec has title, Rowmec's interest is a naked legal claim and Rowmec has no rights whatsoever. *Id*.

12

30.     Even if the funds at issue were not *in custodia legis*, and they are, Rowmec's preferential transfer claim also fails because the purported transfer of funds to Bandas occurred outside the 90 days prior to Rowmec's bankruptcy filing.  Bandas and Shackelford cannot be considered insiders because their interests are not aligned with Rowmec's, and they have been "totally hostile and antagonistic" since Rowmec contested the payment of their fees and sued them for malpractice in early 2009.  *See* 11 U.S.C. § 101(31); *In re Oliver*, 142 B.R. 486, 489 (Bankr. M.D. Fla. 1992).  Because Bandas and Shackelford are not insiders, only transfers that occurred within the 90 days immediately prior to Rowmec's July 13, 2009 bankruptcy filing could meet the requirements of section 547(b).   The alleged preference of $1,620,000.00 occurred on March 13, 2009, 122 days before Rowmec filed its bankruptcy petition.  *See Exhibit B*.  Therefore, the disbursement of Bandas and Shackelford's fees were not preferential transfers. 11 U.S.C. § 547(b).

31.     Rowmec's preferential transfer claim further fails because Rowmec failed to allege any facts that specifically pleaded avoidance of its engagement agreements with Bandas or Shackelford.   Rowmec purportedly seeks to set aside its engagement agreements with Bandas and Shackelford in order to establish that Bandas and Shackelford's claims are unsecured and subject to 11 U.S.C. § 547(b).[4]  *See Doc. No. 1 at ¶ 84, 92, 105*.  Rowmec alleges that it is entitled to set aside the engagement agreements as a remedy for breach of fiduciary duty and fraud.  *See id*. at ¶ 84, 105.  As contracts, Rowmec's engagement agreements are subject to

---

[4] Rowmec cannot merely set aside the engagement agreements with Bandas and Shackelford to render their claims unsecured.  As the Fifth Circuit has explained, once the contingency of a favorable judgment occurs, the attorney's fee becomes a paramount right.  *See Marre v. United States*, 117 F.3d 297, 307–308 (5th Cir. 1997). Thus, pre–judgment, the attorney has a lien, but after the successful judgment springs the contingency, the lien effectively becomes a conveyance.  *Id*.  Bandas, Meyer and Shackelford filed the documents under Tex. Prop. Code § 12.014   to perfect the transfer of their rights pre–petition.  No third party could acquire title to the litigation superior to that of Bandas and Shackelford.  *See Marre*, 117 F.3d at 307–308.

avoidance only on grounds of fraud and mistake. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.3d 171, 178 (Tex. 1997). Because avoidance of a contract is premised on fraud or mistake, any pleading for avoidance as a remedy requires specific allegations detailing the who, what, when, and where of the fraud or mistake in entering into the contract. *Dorsey*, 540 F.3d at 339; FED. R. CIV. P. 9(b).

32.  Rowmec failed to allege any facts that would support avoidance of the engagement agreements with Bandas and Shackelford on grounds of fraud or mistake. *See generally Doc. No. 1*. Specifically, Rowmec failed to allege that the engagement agreements were induced or entered into on the basis of any fraudulent representations or mistaken belief. *See id*. Rowmec further failed to allege that the conveyance of its interests in the recovery to Bandas and Shackelford was negotiated or agreed to on the basis of fraud. *See id*. In fact, the only factual allegations Rowmec asserted against Shackelford center around her purported failure to pursue the claim for commissions under paragraph 5 of the 2003 Settlement Agreement, and her purported silence while Bandas allegedly made representations that he would pursue that claim. *Id. at ¶¶ 78–84, 101–105*. Rowmec failed to allege any facts that would support any theory that the engagement agreements with Bandas and Shackelford should be avoided on the basis of fraud or mistake. FED. R. CIV. P. 12(b)(6), 9(b).

33.  In sum, Rowmec's purported preferential transfer action fails to state a claim upon which relief may be granted for three reasons: first and foremost, the funds in the State Court registry are *custodia legis* and not property of Rowmec; second, even if the funds were Rowmec's, and they are not, the purported preference occurred outside the 90 day period before Rowmec's bankruptcy petition was filed; and third, Rowmec failed to state any claim of

14

fraudulent inducement upon which the relief of setting aside its engagement agreements could be granted.  Because Rowmec fails to state a claim of preferential transfer against Bandas, Rowmec cannot recover any funds from Shackelford as a matter of law.  *See* 11 U.S.C. § 550(a)(2) (only to the extent a transfer is avoided under section 547 may the trustee may recover from any immediate or mediate transferee of such initial transferee.).

**B.**     **Romwec Failed To State A Claim Of Equitable Subordination.**

    **(i)**     **The Law.**

34.     Equitable subordination under 11 U.S.C. § 510 is a remedial measure "which is used only sparingly."  *In re United States Abatement Corp.*, 39 F.3d 556, 561 (5th Cir. 1994).  A three–prong test determines when equitable subordination is permitted:

> (1)     the claimant must have engaged in some type of inequitable conduct;
>
> (2)     the conduct must have resulted in injury to the creditors or conferred an unfair advantage on claimant; and
>
> (3)     the invocation of equitable subordination must not be inconsistent with the provisions of the Bankruptcy Code.

*Id*.  Further, the Fifth Circuit largely confines equitable subordination to three general paradigms: (1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors.  *Id*.  Because the crux of an equitable subordination claim centers on fraud, the allegations supporting an equitable subordination claim should be plead with particularity.  *In re Alphastar Ins. Group Ltd.*, 183 B.R. 231, 276–77 (Bankr. S.D.N.Y. 2008).  The question of whether a creditor's conduct is so egregious as to require the

15

remedy of equitable subordination is a question of law.  *In re United States Abatement Corp.*, 39 F.3d at 559.

        **(ii)**        **The Law Applied To The Facts.**

    35.    In support of its purported equitable subordination claim, Rowmec asserts one general allegation that the Defendants' conduct harmed Rowmec's unsecured creditors and shareholders.  *See Doc. No. 1 at ¶ 95–100.*  Even when considered with Rowmec's fraud allegations, as we discuss next, Rowmec's pleading states mere conclusory allegations without any specific facts establishing any purported injury to Rowmec's other creditors or unfair advantage conferred upon Shackelford in particular.  *Id.*; *see In re United States Abatement Corp.*, 39 F.3d at 561 (dismissing debtor's equitable subordination claim under Rule 12(b)(6) because the claimant's alleged behavior did not support a finding of inequitable conduct); *In re A. Angelle*, 230 B.R. 287, 301 (Bankr. W.D. La. 1998) (finding no action for equitable subordination because the court determined that no fraud occurred).  Rowmec also failed to allege any facts that support an allegation of inequitable conduct.  *Id.*  Thus, Rowmec failed to state a claim for equitable subordination under 11 U.S.C. § 510.  *See id.*

    36.    Furthermore, allegations in a complaint against a group of defendants are not imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statements are specifically pleaded.  FED. R. CIV. P. 9(b); *see, e.g.*, *In re Southland Securities Corp.*, 365 F.3d 353, 365 (5th Cir. 2004).  Rowmec's entire claim for equitable subordination fails to break out which particular defendant's purported conduct was inequitable and caused injury to its creditors or conferred an unfair advantage upon itself.  *In re United States Abatement Corp.*, 39 F.3d at 561; *In re Alphastar*, 183 B.R. at 276–77. Romwec further failed to allege that any particular Defendant was a fiduciary of the debtor who

<div align="center">16</div>

misused his position to the disadvantage of other creditors, that any particular Defendant's conduct defrauded other creditors, or that any particular Defendant controlled Rowmec to the disadvantage of other creditors. *See Doc. No. 1 at ¶¶ 95–100*; *see In re United States Abatement Corp.*, 39 F.3d at 561. Thus, Rowmec's equitable subordination claim fails under Rules 12(b)(6) and 9(b).

**C.** **Under Texas Law, No Breach Of Contract Action Exists In The Legal Malpractice Context.**

       **(i)** **The Law.**

37.    The Texas Supreme Court has expressly held that a breach of contract claim against an attorney based on legal services she provided does not exist. *Barcelo v. Elliott*, 923 S.W.2d 575, 579 (Tex. 1996). In Texas, a legal malpractice action sounds in tort and is governed by negligence principles. *Id.* Where a plaintiff's allegations are that by not taking certain actions during the course of her representation, the attorney did not provide the services for which the plaintiff contracted, the facts do not give rise to a breach of contract action. *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Thus, a cause of action based on any alleged failure to perform legal services is a tort rather than a breach of contract. *See Averitt v. PriceWaterhouseCoopers LLP*, 89 S.W.3d 330, 334 (Tex. App.—Fort Worth 2002, no pet.).

       **(ii)** **The Law Applied To The Facts.**

38.    Rowmec's breach of contract claim against Shackelford is premised entirely on its allegation that Shackelford purportedly agreed to pursue the claim for lost commissions under paragraph 5 of the 2003 Settlement Agreement and failed to do so. *See Doc. No. 1 at ¶¶ 108–109*. Rowmec clearly claims that Shackelford failed to provide the services for which Rowmec

<center>17</center>

contracted, and as such, its claim is one of legal malpractice.  *See Greathouse*, 982 S.W.2d at

172; *Black v. Willis*, 758 S.W.2d 809, 814 (Tex. App.—Dallas 1988, no writ); *Averitt*, 89 S.W.3d

at 334; *Judwin Properties, Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 506 (Tex. App.—

Houston [1st Dist.] 1995, writ denied); *French v. Glorioso*, 94 S.W.3d 739, 745 (Tex. App.—

San Antonio 2002, no pet.); *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 274–75 (Tex. App.—

Austin 2002, pet. denied).  Therefore, Rowmec's breach of contract claim fails to state a claim

upon which relief may be granted.  *Id.*; FED. R. CIV. P. 12(b)(6).

**D.**  **Rowmec Failed To State A Claim For Fraud Against Shackelford.**

**(i)**  **The Law.**

39.  To state a claim for common–law fraud based on nondisclosure, Texas law

requires the plaintiff to allege the following:

> (1)  the defendant concealed or failed to disclose a material fact;
>
> (2)  the defendant knew that the plaintiff was ignorant of the fact or did not have the opportunity to discover the truth;
>
> (3)  the defendant intended to induce the plaintiff to take some action by concealing or failing to disclose the material fact, and
>
> (4)  the plaintiff suffered as a result of acting on the defendant's nondisclosure.

*Dorsey*, 540 F.3d at 341 (citing *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001)).

**(ii)**  **The Law Applied To The Facts.**

40.  The entire body of Rowmec's factual allegations against Shackelford consists of

the following:

> •  Shackelford allegedly made a decision to drop Rowmec's claim for unpaid commissions due under paragraph 5 of the 2003 Settlement Agreement, *see Doc. No. 1 at ¶¶ 33, 78*;

18

- Shackelford allegedly failed to advise Rowmec and its principals of the reasons for this decision, *see id. at ¶ 33*;

- Shackelford witnessed Bandas' purported explanation of the reason for dropping the commission claim, *see id. at ¶¶ 35, 79*;

- Shackelford witnesses Bandas' purported representation that he would re–file the commission claims at a later date, *see id. at ¶¶ 35, 79*;

- Shackelford purportedly knew that Rowmec's commissions claim had been purportedly compromised by Judge Johnson's recommendation and finding and Judge Miller's adoption of same, *see id. at ¶ 80*; and

- Shackelford purportedly failed to proceed with Rowmec's commission claim after the final judgment had been entered, *see id. at ¶ 81*.

Rowmec makes conclusory allegations that Shackelford owed a duty of full disclosure, and Shackelford purportedly remained silent while Bandas made purportedly false representations. *See id*. at ¶ 103.   However, Rowmec failed to allege that Shackelford's purported silence concealed a purportedly material fact.   *See Dorsey*, 540 F.3d at 341.  Rowmec failed to allege how the decision to drop the commissions claim, and how any purported explanation for doing so, constituted fraud.  *Id*.  Rowmec failed to allege specifically how it relied upon any purported explanation for dropping the commission claim, or how it relied upon Shackelford's purported silence regarding that decision.  *Id*.  Rowmec further failed to allege specifically how it was harmed by the decision to drop the commissions claim.  *Id*.  In fact, Rowmec cannot make any such allegations because Shackelford and Bandas obtained a $3.6 million judgment in Rowmec's favor.   For these reasons, Rowmec failed to state a claim for common law fraud against Shackelford under Rules 12(b)(6) and 9(b).

19

**E.** **Rowmec Failed To State A Claim For Conspiracy To Commit Fraud Or Aiding And Abetting Fraud.**

**(i)** **The Law.**

41.     To state a claim for civil conspiracy in Texas, a plaintiff must satisfy the following elements:

> (1)     two or more persons;
>
> (2)     an object to be accomplished;
>
> (3)     a meeting of the minds on the object or course of action;
>
> (4)     one or more unlawful, overt acts; and
>
> (5)     damages as the proximate result.

*In re Webber*, 350 B.R. 344, 366 (Bankr. S.D. Tex. 2006) (citing *Murray v. Earle*, 405 F.3d 278, 293 (5th Cir. 2005)). The crux of a civil conspiracy claim is the injury that is intended to be caused. *Id.* Without knowledge of a conspiratorial plan or scheme to injure another by the commission of a particular wrong, one cannot share the intent to injure another. *Id.* Thus, a person cannot commit a civil conspiracy unless she knows of or agrees to a wrongful act. *Id.*

42.     Texas does not recognize a cause of action for aiding and abetting fraud. *See Highlander Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, No. 3:08–cv–0102–B, 2008 WL 3925272, * 14 (N.D. Tex. Aug. 27, 2008) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n. 7 (Tex. 2001)); *O'Kane v. Coleman*, No. 14–06–00657–cv, 2008 WL 2579832, *5 (Tex. App.—Houston [14th Dist.] Jul. 1, 2008, no pet.) (stating that no Texas cases support the proposition that aiding and abetting fraud is a tort separate from civil conspiracy); *Newby v. Enron Corp. (In re Enron Corp. Securities, Derivatives & ERISA Litigation)*, Nos. H–01–3624, H–03–1087, H–03–3320, H–03–5332, H–03–5333, H–03–5334,

20

H–03–5335, H–04–3330, 04–3331, 04–4455, H–01–3914, 2006 WL 3716669, *8 n. 7 (S.D. Tex. Dec. 12, 2006) (where plaintiffs pled a conspiracy to commit fraud action, their aiding and abetting claim was redundant and unnecessary because Texas had not clearly recognized a cause of action for aiding and abetting common law fraud).

**(ii)** **The Law Applied To The Facts.**

43.     Rowmec further alleges that by remaining silent, Shackelford joined a purported conspiracy with Bandas to defraud Rowmec. *See id.* at ¶ 103.  Romwec failed to allege any facts that support an agreement between Shackelford and Rowmec to accomplish a specific injury, any facts that supported a meeting of the minds on that objective, any facts that Shackelford knew of the wrongful act to be accomplished, or any facts that Shackelford committed an unlawful act in furtherance of the purported agreement. *In re Webber*, 350 B.R. at 366.  Romwec further failed to allege how it suffered damages as a result of Shackelford's purported conspiracy.   Thus, Rowmec failed to state a claim for civil conspiracy to commit fraud under Rules 12(b)(6) and 9(b). *Id.*

44.     Because Texas does not recognize a cause of action for aiding and abetting fraud, Rowmec failed to state a claim upon which relief may be granted. *See Highlander Crusader Offshore Partners, L.P.*, No. 3:08–cv–0102–B, 2008 WL 3925272, at * 14; *O'Kane,* No. 14–06–00657–cv, 2008 WL 2579832, at *5; *In re Enron Corp. Securities, Derivatives & ERISA Litigation*, Nos. H–01–3624, H–03–1087, H–03–3320, H–03–5332, H–03–5333, H–03–5334, H–03–5335, H–04–3330, 04–3331, 04–4455, H–01–3914, 2006 WL 3716669, at *8 n. 7.

## Conclusion

45.     Shackelford requests the Court to grant this motion and to dismiss Rowmec's causes of action for preferential transfer under 11 U.S.C. §§ 547 and 550, equitable

21

subordination under 11 U.S.C. § 510, breach of contract, fraud, conspiracy to commit fraud, and

aiding and abetting fraud against her under Rules 12(b)(6) and 9(b).  Shackelford also requests

any other, further, or alternative relief to which she is legally or equitably entitled.

<div style="margin-left:40%">

Respectfully submitted,

**CRUSE, SCOTT, HENDERSON & ALLEN, L.L.P.**


By:_____/s/ Billy Shepherd_____

Billy Shepherd
Texas Bar No. 18219700
Federal I.D. No. 10666
Email bshepherd@crusescott.com
2777 Allen Parkway, 7th Floor
Houston, Texas  77019–2133
Telephone No. (713) 650–6600
Telecopier No. (713) 650–1720

**ATTORNEY–IN–CHARGE FOR DEFENDANTS
THE SHACKELFORD LAW FIRM
AND PATRICIA A. SHACKELFORD**

</div>

**OF COUNSEL:**

**CRUSE, SCOTT, HENDERSON & ALLEN, L.L.P.**

Lauren Held Harris
Texas Bar No. 24046052
Federal I.D. No. 569704
Email lharris@crusescott.com
2777 Allen Parkway, 7th Floor
Houston, Texas  77019–2133
Telephone No. (713) 650–6600
Telecopier No. (713) 650–1720

### Certificate Of Service

I hereby certify that on Tuesday, September 8, 2009, a true and correct copy of the foregoing instrument was served on all known counsel of record via CM/ECF in accordance with FED. R. CIV. P. 5 and FED. R. BANKR. P. 5001.


     /s/ Lauren Held Harris
Lauren Held Harris

23